## O. D. SCHENDEL v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

March 14, 1924.

No. 23,807.

**Statement of switching foreman inadmissible as res gestae.**

1. It was error to admit as res gestae a statement made by the foreman of a switching crew to the coroner concerning the accident, which had happened some 15 to 20 minutes previously, wherein a member of the crew was killed. The statement was not a spontaneous expression springing involuntarily from the event, but a mere recital thereof after time and opportunity for reflection and design.

**Defendant entitled to instruction as to sole proximate cause.**

2. Under the evidence defendant was entitled to have the jury instructed that, if plaintiff's intestate went between the cars to lift the pin in a defective coupler contrary to the express command of the foreman, his wilful disobedience would be the sole proximate cause of his death.

**Question for jury.**

3. The evidence made it a jury question whether the defective coupler was a contributing cause of the death of plaintiff's intestate.

Action in the district court for Swift county by the special administrator of the estate of Charles Hilt, deceased, to recover $50,000 for the death of his intestate. The case was tried before Baker, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $28,620. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *Daly & Barnard,* for appellant.

*Tom Davis, Ernest A. Michel, R. M. Haines, John I. Davis* and *Thomas Welch,* for respondent.

[1]Reported in 197 N. W. 744.

HOLT, J.

The appeal is from an order denying defendant's motion in the alternative for judgment non obstante or a new trial.

Plaintiff's intestate, an employe of defendant engaged in its interstate traffic, was killed while so employed. The complaint alleged that death came in the attempt to make a coupling with a defective coupler. The answer contained a general denial and the defenses of contributory negligence and assumption of risk.

The evidence in behalf of plaintiff is that in a switching movement in defendant's yard at Janesville, Wisconsin, it became necessary to move 3 bad order cars. Upon one of these cars, spoken of as the Burlington, part of the pin-lifting device of the coupler at one end was gone so that the lever would not lift the pin. It was the duty of Mr. Hilt, plaintiff's intestate, to cut the train where this Burlington car was, but he was unable to do this, because the coupling could not be lifted by the lever on that side of the train where Hilt was and where ordinarily the train operators had to work on account of a curve in the track and some obstructions which prevented proper signaling from the other side; that Hilt went in between the cars to lift the pin by hand; that the train was started at his signal while he was so between the cars, and he was thrown down and his body run over by the trucks of that end of the car having the defective coupling device, and then the train movement was reversed, and his body was noticed and the train stopped when the trucks of that end of the attached car nearest to the defective coupler was upon him.

Defendant's evidence was that, when Hilt called the foreman's attention to the fact that the lever upon that car did not lift the pin, the foreman directed him to go to the other side to cut off the car; that Hilt stepped up in the stirrup, apparently to carry out the order given; that the foreman turned to walk toward the engine so as to forward the signals to the engineer as Hilt would give them; that when he heard the signal of two sharp whistles from Hilt, which was to move the train forward, the same was transmitted to the engineer, and the train moved a few feet; that then the signal to back was given by the foreman, and as it was obeyed Hilt's body

was discovered, the train was stopped and allowed to remain stationary until the coroner, who was at once summoned, arrived some 15 or 20 minutes after the accident.

In view of the conclusion that a new trial must be awarded because of prejudicial error, it will not be necessary to more fully detail or discuss the evidence in behalf of either party.

Errors assigned on the admission of the testimony as to the statement of the foreman to the coroner we deem well taken. This testimony was received as part of plaintiff's case in chief over defendant's objection that it was incompetent, irrelevant, immaterial and hearsay. It was this: Shortly after the coroner's arrival upon the scene of the accident, he had this conversation with the foreman: "I asked him about the accident, what had taken place. He told me that Mr. Hilt was on duty as a switchman there and had stepped in between the cars to raise this coupling pin, and he at the same time said: 'You will notice that this is a bad order car, there is no rod running from the pin.'" The defendant also moved to strike out this testimony as hearsay, not binding on it, and not a part of the res gestae. This was denied and exception preserved. That this evidence went far to fasten liability upon defendant cannot be gainsaid, and was therefore prejudicial unless properly admissible at that stage of the case.

Plaintiff seeks to justify the ruling on the authority of Clark v. Davis, 153 Minn. 143, 190 N. W. 45, contending that the statement or recital was admissible as part of the res gestae. There the test for res gestae utterances was thus formulated [at pages 146, 147]: "The utterances must spring out of the transaction, must be spontaneous, generated by an excited feeling which extends without break or let down from the moment of the event to the moment of the utterance, and under such circumstances as to reasonably preclude the idea of calculation of deliberate design." The vigorous dissent should place that case on the border line, and from which the instant case is far removed, even though the interval between the event and the statement is shorter. The utterance in the Clark case was by the injured party who, from the moment of the accident, had been continuously in extreme

agony and most of the time unconscious or semiconscious. Here the one who made the statement was, so to speak, a disinterested by-stander. In his recital he assumed no responsibility at all for what had happened. The excitement was all over. He knew the victim of the accident had been dead for more than a quarter of an hour. It was not the spontaneous outcry of a spectator of the accident as it was taking place, like Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645. He merely related a past event as to which he had had ample time to consider what to say, for he had caused the coroner to be sent for, was awaiting his arrival, and, no doubt, realized that he would be called upon to make a statement. A statement so obtained cannot claim spontaniety nor can it be said that the mental shock extended "without interruption from the moment of the event to the moment of the statement or exclamation" so as to come within the res gestae rule as given in the two cases cited. See also Vicksburg & M. R. Co. v. O'Brien, 119 U. S. 99. That the foreman was afterwards called by defendant and could be cross-examined and impeached by testimony similar to that introduced in chief, as above stated, does not cure the error nor avoid the prejudice. Neither is it an answer to the claim of prejudicial error to say the testimony erroneously received was merely cumulative. It may have been the turning point with the jury.

The answer denied that the defective coupling was the cause of Hilt's death, and defendant claims that its evidence proved Hilt's disobedience of the foreman's positive order to him was the sole proximate cause thereof. Certain requests to instruct the jury upon this phase of the evidence were asked and denied. One of the refused requests reads: "I charge you that if you believe that the foreman in charge of the crew in which Charles Hilt was working, on learning from the said Hilt that the coupling lifting lever or device was defective on the Burlington car, and that the foreman upon being so advised by the said Hilt ordered the said Hilt to go to the other side of the cars, and the said Charles Hilt disobeyed said order, then his disobedience, and not the defective device, was the proximate cause of his death, and the plaintiff cannot recover

in this case." While this requested instruction and the other two relating to the same matter are open to some verbal criticism, we think defendant was entitled to instructions along the line asked. We cannot concur in plaintiff's view that defendant's requests were sufficiently covered by this part of the charge upon proximate cause: "In determining that question, you should take into account all the evidence in the case and all the facts and circumstances bearing on the duty of the decedent and the work to be done by him at the time in question * * * On the other hand, defendant contends that the defect did not cause or require decedent to go between the ends of the cars, and that he did not go between the ends of the cars and that he did not in fact do so for the purpose of uncoupling, and that, therefore, the defect was not the proximate cause of the injury." We doubt whether this states defendant's position accurately. At any rate, the jury should have been told, in language not to be misunderstood, that if the foreman ordered Hilt to go to the other side of the train, and he, disobeying that express command, went in between the cars to lift the pin, they properly should consider the disobedience the sole proximate cause of his misfortune.

No matter how strictly, and justly so, railroad companies are held to the absolute duty of complying with the provisions of the Safety Appliance Act, they must nevertheless be conceded the right to exact obedience from an employe to a foreman's direct command requiring instant execution. And if such employe, directly contrary to such command, meddles with a defective appliance, his wilful disobedience must be regarded as the sole cause of what may result. By this we do not mean to restrict or limit the doctrine of Otos v. Great North. Ry. Co. 128 Minn. 283, 150 N. W. 922, affirmed in Great North. Ry. Co. v. Otos, 239 U. S. 349, that, by the issuance of general standing orders or rules, a railroad company, engaged in interstate commerce, may evade liability for injuries to employes received in working with defective cars the use of which the Safety Appliance Act forbids, rules, perhaps more honored in the breach than the observance. But, in a business so fraught with danger to life and limb of employes and passengers alike as that of rail-

roading, orders from the one in command of the train movement and affecting the same must be obeyed as the first indispensable requisite of safety to all. At times, a bad order car must of necessity be moved or cut out of a train. In the instant case the Burlington car had to be uncoupled. The foreman as well as Hilt knew the lever thereof would not lift the pin. They evidently knew that, by going to the other side of the train, the lever of the car attached to the Burlington could be used to make the desired cut. The foreman, according to defendant's evidence, ordered Hilt to go to the other side. If the foreman ordered Hilt so to do, and the latter disobeyed and went in between the cars on the side he was, the consequences must be attributed solely to wilful disobedience. In such a situation the defective coupler is not in law a contributing cause of the injury. It is true that in Grand Trunk Western Ry. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. ed. 838, Ann. Cas. 1914C, 168, and Great North. Ry. Co. v. Otos, supra, it was said that if the defect in the appliance was found to be the proximate cause of the injury, the fact that "plaintiff's conduct contributed to the result was not a defense." But the conduct in both cases was referable to negligence only, and was not the wilful disobedience of an express order not to use the defective appliance.

The defendant is not entitled to judgment notwithstanding the verdict. The evidence did not require a finding of wilful disobedience of the foreman's command by Hilt. The jury could well conclude, from what this record contains, that Hilt was not directed to go to the other side of the train, that he went in between the cars to lift the pin by hand; this, at the most, was negligence, and would not affect the right to recover for an injury proximately caused by the attempt to use the defective coupler. That part of the order denying defendant judgment was right.

We do not reach the other errors assigned.

The result is that insofar as the order appealed from denied a new trial it must be reversed and a new trial granted.

So ordered.