## PERE MARQUETTE RY. CO. v. ANDERSON.

Circuit Court of Appeals, Seventh Circuit.
December 7, 1928.

No. 4008.

Sidney C. Murray, of Chicago, Ill., for plaintiff in error.

William E. Griffin, of Chicago, Ill., for defendant in error.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Defendant in error, as administrator of Mary Anderson, deceased, brought this action for damages for her death, caused by a collision between the coupé in which she was riding and a passenger train of plaintiff in error.

The accident occurred at a crossing of a highway and the railroad, in the state of Indiana. The declaration was in three counts. The first alleged as the act of negligence the failure to install and maintain an automatic signal bell at the crossing; the second alleged that plaintiff in error "drove, managed and operated the train so negligently, carelessly, and improperly" that the train and motor vehicle were brought into violent collision; the third averred as the act of negligence failure to sound the whistle and ring the bell upon the locomotive as required by the Indiana statute.

At the close of the evidence plaintiff in error moved the court to direct a verdict of not guilty on each count. The court sustained the motion as to the first count, but denied it as to the second and third. To this denial plaintiff in error excepted.

As stated, the only negligence averred in the third count was a failure to sound the whistle and ring the bell as the statute required. Upon this issue the engineer and fireman both testified positively that the whistle was blown and the bell rung. The baggageman also testified that he knew of his own knowledge that these signals were given. On the other hand, two witnesses, who were riding in an automobile about 300 feet behind the coupé, testified that they did not hear the whistle or bell. The only other witnesses who spoke on this subject were two passengers on the train, both in the same car. One, plaintiff in error's witness, testified that she heard both the whistle and the bell. The other, defendant in error's witness, testified that he did not remember hearing them.

The statements of the engineer, fireman, and baggageman, that the signals were given, and of the woman that she heard them, may be true; and the statements of the witnesses of defendant in error that they did not hear them, and by one that he did not remember hearing them, may also be true. In Chicago & N. W. Ry. Co. v. Andrews, 130 F. 65, 70, the Circuit Court of Appeals of the Eighth Circuit said: "Where the attention of those testifying to a negative was not attracted to the occurrence which they say they did not see or hear, and where their situation was not such that they probably would have observed it, their testimony is not inconsistent with that of credible witnesses who were in a situation favorable for observation, and who testify affirmatively and positively to the occurrence. There is then no conflict."

In Baltimore & Ohio R. Co. v. Baldwin, 144 F. 53, 54, the Circuit Court of Appeals of the Sixth Circuit said: "The trend of decision seems to be that negative testimony given by witnesses who do not state, or when the circumstances fail to indicate, that they

were giving attention and observed at the time that the fact or event did not occur, is not in conflict with positive testimony of witnesses who were present and had equal opportunities for observing that it did occur."

■ The testimony of the passenger on the train who said he did not remember hearing the signals may be disregarded entirely; and the situation of the witnesses who said they did not hear them emphasizes the weakness of their testimony. They were riding in a Cadillac sedan over a rough and stony road, conversing with each other and two other persons in the sedan, some 300 feet behind the. coupé; and the photographs introduced in evidence by both parties show plainly that on account of an embankment between them and the on-coming train, and the condition of the road—being rough and stony at that point— they were not favorably situated to hear the signals. It further appears that they were not giving attention to whether the signals were given.

The question is not a new one. It has often been decided. See Bergman v. Northern Pacific Ry. Co. (C. C. A.) 14 F.(2d) 580; Chicago & Eastern Illinois Ry. Co. v. Sellars (C. C. A.) 5 F.(2d) 31; Penna. Ry. Co. v. Swartzel (C. C. A.) 17 F.(2d) 869.

There was no conflict in the evidence, and therefore nothing to go to the jury on the third count.

■ The second count avers generally that plaintiff in error "drove, managed, and operated the train so negligently, carelessly and improperly" that the train and motor vehicle were brought into violent collision. No act of omission or commission was alleged. Proof of failure to blow the whistle and ring the bell would sustain this general charge; but, as we have seen, defendant in error failed to establish such act of negligence. Automatic signals are not required at railroad crossings in Indiana, either by the common law or by the statutes of that state. The trial court so ruled in sustaining the motion to direct a verdict upon the first count.

The theory upon which the recovery is sought to be sustained under count 2 is that the crossing was especially dangerous on account of obstructions which cut off the view of approaching trains, and by reason of the amount of travel on the highway and the number of trains passing on the railroad; and it is contended that to run the train over the crossing at the speed testified to—55 to 60 miles an hour—without an automatic signal, was negligence; that ordinary prudence required plaintiff in error to take extra precautions for the safety of travelers on the highway.

In Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 421, 12 S. Ct. 679, 684 (36 L. Ed. 485), the Supreme Court said: "As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous, is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence; although in some cases it has been held that it is a question of law for the court. It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or, by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country."

Leaving out of consideration, as we must, the negative testimony as to the whistle and the bell, defendant in error directed his evidence on this count to the speed of the train, the absence of an automatic signal at the crossing, some evidence of the number of trains run daily over the crossing and the number of vehicles traveling the highway, and certain obstructions about the crossing. The crossing was in the country, and not in a town or even a village. The nearest hamlet —and it was a mere hamlet, one witness saying "it has two or three houses and a school" —was a quarter of a mile away. Eight photographs of the crossing and its surroundings were introduced in evidence, three by defendant in error and five by plaintiff in error. These photographs, taken with the camera placed in different positions so as to give different views of the crossing and its surroundings, show a crossing in the open country in full view, and only in one of them is there shown a human habitation. There are the usual signs by the side of the highway notifying travelers of a railway crossing, and the usual sign at the crossing, with the words on it: "Railroad crossing. Look out for the cars.

Danger." At the crossing the railroad runs upon an embankment several feet higher than the highway, and the track upon it is in full view. The only obstruction shown by the photographs, and testified to by witnesses, is an embankment at the side of the highway which shuts off a view of the track upon which the train was approaching, back from a point on the highway 75 to 100 feet from the track. But from a point about 75 to 100 feet from the track the obstruction ends, and for about 25 feet along the highway a clear view is furnished down the track for a considerable distance. At that point a shanty obstructs the view, but the face of the shanty is 30 feet 6 inches from the nearest rail of the track, and within this 30 feet 6 inches there is a clear view of the track both ways for several hundred feet. The physical surroundings do not even suggest that the crossing is an especially dangerous one.

Witnesses testified that about 50 passenger trains pass over the crossing daily, and two said that from 40 to 50 motorcars an hour pass along the highway on ordinary days—more on holidays.

To run a passenger train 60 miles an hour in the open country has been repeatedly held not to be negligence. The photographs show clearly that this was not in itself an especially dangerous crossing, and the evidence did not show that the travel over it was of the kind or amount to make it extrahazardous. The evidence was not sufficient to support a finding upon the second count.

Reversed and remanded.