## REUBEN POLCHOW v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY AND ANOTHER.[1]

January 8, 1937.

No. 30,912.

[1]Reported in 270 N. W. 673.

*William T. Faricy, Warren Newcome, Alfred E. Rietz,* and *Wilson & Wilson,* for appellant.

*W. E. Hottinger, Robert J. McDonald, John Edmund Burke,* and *William H. DeParcq,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action to recover damages for injuries received in a collision.

The defendant Chicago, St. Paul, Minneapolis & Omaha Railway Company operates and maintains two main line tracks through the city of Mankato, Minnesota. They are crossed at right angles by Given street, one of the public thoroughfares in said city. The southernmost track of these two main line tracks is the eastbound main line track. Fifteen feet south of this east line track measuring from center to center and running approximately parallel to it is a spur track, the north rail of which is 10½ feet south of the southerly rail of the east main track. This spur track hereinafter will be referred to as the first spur track. Fifteen feet south of the first spur track is a second one, which will be referred to as the second track.

All of these tracks intersect with Given street, which is graveled, the traveled portion of which varies from 13 to 24 feet near the point of intersection. At the point of crossing, the street is laid with a 16-foot wood planking parallel to and between the railroad tracks.

On January 30, 1932, Reuben Polchow, the plaintiff, was driving a truck in a northerly direction along Given street. He drove onto the planking and over both spur tracks. When his front wheels

were on the main line track he was struck from the left by defendant's train, which was traveling in an easterly direction.

Of plaintiff's two passengers, one was killed and the other injured. Plaintiff himself suffered injuries and later brought suit joining as a defendant with the railroad company one Peter McTie as the operator of the engine.

At the close of all the evidence each defendant moved for a directed verdict. The motion of McTie was granted because it appeared that he had not been in charge of the engine involved in the crash. The motion of the railway company was denied. The jury returned a verdict for plaintiff in the sum of $4,000. This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Three questions are presented:

(1) Was there a proper question of fact for the jury's determination as to defendant's negligence?

(2) Was plaintiff contributorily negligent as a matter of law or was the question properly submitted to the jury?

(3) Did the court err in the instructions given or in refusing various instructions requested by defendant?

■ The plaintiff claimed negligence on part of the defendant railway in the following particulars: (a) That the defendant's engineer negligently failed to sound the whistle and ring the bell for the crossing; (b) that the defendant's train was traveling at a high and negligent rate of speed which was not reduced upon approaching the crossing; (c) that the defendant negligently placed a string of boxcars upon the first spur track in such a manner that plaintiff's view was obstructed. These points will be considered in the order named.

(a) It is contended that the state of the record was such as not to warrant submission of this issue to the jury. We cannot agree.

On behalf of the railway company, several employes testified positively that both whistle and bell were sounded for this crossing. Among those so testifying were the engineer, the fireman, and Peter McTie, an engineer who was riding in the engine at the time

of the accident. Supporting the claim that the whistle was sounded was the testimony of the conductor of the train, a baggageman, and two other employes of the railway. The wife of one of these latter named employes, Mrs. Rauchman, also testified that she heard the whistle. Mr. and Mrs. Rauchman were both in their home a short distance from the crossing at the time of the collision.

On the other hand, the plaintiff and his companion in the truck both testified that they heard no whistle or bell. Three other witnesses, all disinterested, testified that they heard neither whistle nor bell.

As is usual in a case such as this, the testimony on behalf of the plaintiff with reference to signals is entirely negative. It cannot be denied that such testimony is on its face less convincing than is positive testimony. But we cannot, however, lose sight of the fact that in a situation of this character negative testimony is the only type available. To hold it insufficient would deprive a litigant of any means of proving negligence in regard to the sounding of audible signals. Thus, such negative testimony is clearly competent and of probative value, and the weight to be given thereto is for the jury, considering all the circumstances surrounding the witnesses at the time of the accident. 10 Minn. L. Rev. 543.

Corroborating the testimony of the plaintiff and his companion, who were both in the cab of the truck, the three disinterested witnesses, who lived near the railroad crossing, testified that they each heard the crash but heard no warning signals immediately prior thereto. . We are unable to reach any other conclusion than that the record presented a question of fact upon this issue within the rule laid down in prior decisions of this court, and that the trial court properly submitted this issue to the jury. Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 A. S. R. 422, 9 Ann. Cas. 935; Willett v. G. N. Ry. Co. 154 Minn. 10, 191 N. W. 260; Perkins v. C. M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; Setosky v. Duluth, S. S. & A. Ry. Co. 173 Minn. 7, 216 N. W. 245.

(b) Plaintiff produced one disinterested witness who testified that the train was traveling at a speed of between 55 and 60 miles

per hour. This witness, Walter Gillson, was standing in his kitchen window looking out toward the crossing and had a clear and unobstructed view. He saw the engine go by, heard the application of the brakes of the train, and saw sparks fly from the wheels and rails, after brake application, for a distance of about 500 feet before the train came to a stop. On the part of the defendants, several employes testified to speeds varying from 35 to 40 miles per hour.

The question of speed is one peculiarly for the jury. It necessarily must be based in the great majority of the cases on opinion testimony. The jury has the opportunity in each instance to observe the demeanor of the witness testifying. His candor can best be determined by those actually hearing him. His experience or lack of experience is far more apparent to the observer than to the reader of the printed record. These are all factors to be considered by the jury in reaching a decision under proper instructions from the court and are factors which cannot adequately be considered by us who have no opportunities for observation.

In this case, considering the testimony by both parties, the circumstances attending the approach of the train to the crossing in question, the application of the brakes, with special attention to the point at which the brakes were first applied, the fact that the train was somewhat late, and the testimony of disinterested witnesses, one a former railway employe, we are of the opinion that the conflicting testimony presented a question properly for the jury's determination.

(c) The evidence is ample to sustain a finding that the boxcars were negligently placed or "spotted" on the spur track so that plaintiff's view was obstructed. Plaintiff testified that there were eight or nine of these cars extending west, the direction from which the train was coming, and that these cars were so close to the road that he could not see to the left when he approached the crossing. Plaintiff's passenger corroborated this testimony. One M. G. Knoff, a disinterested witness, states that these cars were about six feet from the crossing planking. Another disinterested witness testified that the cars were about 15 or 20 feet from the traveled

portion of the road; two other witnesses, also disinterested, fixed their position as about 15 feet from the road; while still another stated that he paced off the distance from the planking to the cars and found it to be seven short paces. Still another witness estimated the distance from the traveled portion of the road to be seven or eight feet.

On behalf of the defendant, there was testimony tending to qualify and contradict that produced by plaintiff. Without detailing or elaborating defendant's testimony on this point, it is sufficient to say that the testimony most favorable to plaintiff was ample to sustain a finding of negligence in this regard.

■ Although plaintiff testified that he took precautions to stop, look, and listen 21 feet from the main line crossing, defendant claimed that he was contributorily negligent as a matter of law. We do not agree. Whether plaintiff took the precautionary measures detailed in his testimony is a question of fact.

Plaintiff did not leave his truck to look for approaching trains as he neared the crossing. That was an uncommon precaution that he was not required to take. This case is so similar in fact to the case of Pokora v. Wabash Ry. Co. 292 U. S. 98, 104, 54 S. Ct. 580, 582, 78 L. ed. 1149, 91 A. L. R. 1049, that we quote from that opinion at length:

"The testimony permits the inference that the truck was in the zone of danger by the time the field of vision was enlarged. No stop would then have helped the plaintiff if he remained seated on his truck, or so the triers of the facts might find. His case was for the jury unless as a matter of law he was subject to a duty to get out of the vehicle before it crossed the switch, walk forward to the front, and then, afoot, survey the scene. We must say whether his failure to do this was negligence so obvious and certain that one conclusion and one only is permissible for rational and candid minds. * * *

"To get out of a vehicle and reconnoitre is an uncommon precaution, as everyday experience informs us. Besides being uncommon, it is very likely to be futile, and sometimes even dangerous. If the

driver leaves his vehicle when he nears a cut or curve, he will learn nothing by getting out about the perils that lurk beyond. By the time he regains his seat and sets his car in motion, the hidden train may be upon him. * * * Often the added safeguard will be dubious though the track happens to be straight, as it seems that this one was, at all events as far as the station, about five blocks to the north. A train traveling at a speed of thirty miles an hour will cover a quarter of a mile in the space of thirty seconds. It may thus emerge out of obscurity as the driver turns his back to regain the waiting car, and may then descend upon him suddenly when his car is on the track. Instead of helping himself by getting out, he might do better to press forward with all his faculties alert. So a train at a neighboring station, apparently at rest and harmless, may be transformed in a few seconds into an instrument of destruction. At times the course of safety may be different. One can figure to oneself a roadbed so level and unbroken that getting out will be a gain. Even then the balance of advantage depends on many circumstances and can be easily disturbed. Where was Pokora to leave his truck after getting out to reconnoitre? If he was to leave it on the switch, there was the possibility that the box cars would be shunted down upon him before he could regain his seat. The defendant did not show whether there was a locomotive at the forward end, or whether the cars were so few that a locomotive could be seen. If he was to leave his vehicle near the curb, there was even stronger reason to believe that the space to be covered in going back and forth would make his observations worthless. One must remember that while the traveler turns his eyes in one direction, a train or a loose engine may be approaching from the other."

The record in this case indicates that had plaintiff stopped at a point sufficiently far away from the track and had he then reconnoitred, it is doubtful, considering the speed of the train, whether it would have promoted his safety. Considering all facts, we are of the opinion that the situation involved here cannot in sound reason be distinguished from the situation in the Pokora case.

There is nothing in the Minnesota decisions inconsistent with the decision of the Pokora case. On the contrary, as stated in 19

Minn. L. Rev. 130, 131: "The language of the Minnesota cases seems to favor the view" of the Pokora case. See also discussions of this problem in 10 Minn. L. Rev. 265; 12 Minn. L. Rev. 86; 17 Minn. L. Rev. 771.

We therefore conclude that the Pokora case properly states the law as it exists in this state and that the question of contributory negligence under such circumstances is one of fact for the jury.

■ Defendant has assigned numerous errors in regard to instructions given and instructions refused. The trial court.was presented with numerous instructions. Many of them were refused. The court proceeded to give instructions in the usual and customary fashion, employing its own phraseology. We have carefully examined the instructions given and compared them with the requested instructions. We find no error in those given and find that they cover in all material respects those requested by defendant. With reference to the question of plaintiff's contributory negligence, the court stated:

"Now, then, ladies and gentlemen of the jury, there is one other thing that you must also determine. I have stated to you already that the defendant railway company claims that the plaintiff,. Mr. Polchow, was guilty of contributory negligence. You must also determine that issue. By contributory negligence is meant this: If the plaintiff, Mr. Polchow, failed to exercise the care that an ordinary prudent person would exercise under the same or similar circumstances, he would then be guilty of negligence. If that negligence contributed directly to the accident as a cause, he would then in law be guilty of contributory negligence and could not recover. The burden of proving contributory negligence is upon the party who asserts it, that is, upon the defendant railroad company.

"Now, you understand, ladies and gentlemen of the jury, a railroad crossing is a place of danger. You understand also that one who approaches that crossing is required to observe and to listen. Now, then, ladies and gentlemen of the jury, you take into consideration all of the circumstances as they existed at that time and place. You determine from the evidence as you have heard it and,

from fair and reasonable inferences to be drawn from that evidence, whether or not Mr. Polchow at the time he approached that crossing exercised the care and observed and listened in the manner that you would expect of the ordinary prudent person under the same or similar circumstances. If he exercised that care which the ordinary prudent person would exercise under the same or similar circumstances, then of course he would not be guilty of negligence. On the other hand, if he failed to exercise that care which the ordinary prudent person would have exercised under the same or similar circumstances, he would then be guilty of negligence. If that negligence contributed directly to the accident as a cause, in any degree, he would then in law be guilty of contributory negligence and could not recover."

These instructions state substantially the duty of one approaching a railroad crossing, and while language differing in phraseology might have been employed and as a result have been less ample in scope and volume, we find no merit to the claim of error in the instruction as given.

Other assignments of error have been examined with care, and we find them to be without merit. They require no discussion.

The order appealed from is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.