# JOSEPH A. LANG v. CHICAGO & NORTH WESTERN RAILWAY COMPANY AND ANOTHER.[1]

November 8, 1940.

No. 32,508.

[1]Reported in 295 N. W. 57.

488

*Warren Newcome, Alfred E. Rietz, W. T. Faricy,* and *Somsen, Dempsey, Johnson & Somsen,* for appellants.

*Davis & Berg* and *Pfaender & Glotzbach,* for respondent.

HOLT, JUSTICE.

Theresia Lang, unmarried, 22 years old, was killed when, at 3:26 a. m. April 5, 1939, a collision occurred on Sixth street in Sleepy Eye, a city of about 2,700 population, between an eastbound passenger train of the defendant company and a Ford car in which Miss Lang was riding. Plaintiff sued the railway company and its trustee, charging that Miss Lang's death was due to defendant's wrongful acts and omissions. Hereinafter the railway company will be referred to as the defendant.

The complaint alleges various negligent acts and omissions; but it will be necessary to refer to only the two as to which evidence was received, and which two were submitted to the jury as a basis for a verdict.

Plaintiff pleaded a violation of a duly enacted ordinance of the city forbidding the operation of locomotive or trains at a greater speed than six miles an hour. The ordinance was received over defendant's objection that it was unreasonable and void and an undue burden upon interstate commerce, it being conclusively established that defendant's train was an interstate train. The court charged the jury that the operation of this train across Sixth street at from 15 to 20 miles an hour violated a valid ordinance and was negligence warranting a recovery, if the jury found from the evidence that such negligent speed was a proximate cause of Miss Lang's death. We think the court rightly received the ordinance and correctly instructed the jury that defendant's violation thereof was negligence. Ever since the decision in Knobloch v. C. M. & St. P. Ry. Co. 31 Minn. 402, 18 N. W. 106, it has been the law in this state that a municipality, in virtue of its delegated police power of the state, may by ordinance reasonably regulate the speed of trains within its limits, and courts may not hold such ordinance void as in restraint of trade unless its unreasonableness or want of necessity is clear, manifest, and undoubted. There the ordinance limited the speed of trains to four miles an hour. This decision was followed in Weyl v. C. M. & St. P. Ry. Co. 40 Minn. 350, 42 N. W. 24; Evison v. C. St. P. M. & O. Ry. Co. 45 Minn. 370, 373, 48 N. W. 6, 11 L. R. A. 434. In the Weyl case recovery was denied because of the plaintiff's contributory negligence, and in the Evison case the court ruled that the speed ordinance was void as unreasonable at the crossing in the outskirts of the city of St. Paul, where the collision occurred. All three cases hold that it is for the court to determine whether or not a speed ordinance is void for un-

reasonableness or want of necessity. In the instant case it appears that the Ford was being driven south upon Sixth street, that the easterly sidewalk line of the street is 104 feet west of the center of defendant's passenger depot; that over this street is routed trunk highway No. 4, much traveled night and day; that defendant crosses this street at somewhat of an angle with eight of its tracks; that its main track upon which the passenger train was running at the time of the collision is the most southerly of the eight; that the northerly rail of the most northerly track is about 120 feet from the southerly rail of the main track; and that no gate was operated and no watchman was stationed at this crossing or other means of warning travelers provided than a cross-buck sign. So it is obvious that this was a dangerous crossing where the speed of a train may greatly threaten the safety of those traveling on the street. Defendant vigorously contends that as a matter of law speed was not a proximate cause of the collision. We think it was for the jury to determine whether or not the impact of the train would have caused any injury to Miss Lang had it not been running at more than six miles an hour. In the case of Hammer v. M. St. P. & S. S. M. Ry. Co. 216 Wis. 7, 9, 255 N. W. 124, 125, cited by defendant, the court, considering whether speed there was a proximate cause of the collision, uses this language: "Had the severity of his injuries been increased by the momentum induced by the speed, a different situation would be presented." Here the momentum of the train was more than twice that permitted by the ordinance. The issue of unlawful speed as a proximate cause was for the jury. Taking the whole situation into consideration, it justified the jury in concluding that the impact would not have caused death if the speed of the train had conformed to the ordinance.

The only other ground of negligence of defendant submitted was whether the spaces between the rails of its tracks on Sixth street were maintained as required by

1 Mason Minn. St. 1927, § 4734. It was shown that there was one 12-inch plank on each side of the rails on each of the three southerly tracks and no plank next the rail of any other track, and that between the rails and the planks there was crushed rock; that the tires of passing motor vehicles gouged out this crushed rock, causing holes in the roadway from two to five inches in depth; and that by reason of these depressions and the fact that the tracks were laid at somewhat of an angle with the street it caused the Ford to shimmy and rattle, making it more difficult to drive. We think the evidence in respect to the condition of Sixth street between defendant's tracks took that issue to the jury.

Defendant also claims that Miss Lang's contributory negligence appears as a matter of law, and therefore it was entitled to a directed verdict and should now have judgment *non obstante*. She was a guest passenger of Tews, the driver of the Ford. The burden was upon defendant to show that she was guilty of negligence. It is true, she was in a better position than Tews to observe the approach of the passenger train, she being to the right in the rear seat, and Tews' view to the west being in a measure obstructed by Miss Sorenson, seated to his right. But there was no evidence that Miss Lang was aware of the approach of the train, and a passenger in a vehicle is not required to exercise the care and caution required of the driver. Mr. Tews testified, on cross-examination, that he drank one pint bottle of beer in a restaurant in Sleepy Eye before he drove out to the tavern Red Horse, nine miles north of Sleepy Eye, on trunk highway No. 4, and another bottle while there and one pint bottle of spiked near-beer; but there is no testimony that Miss Lang saw him drink or that he was visibly under the influence of liquor. So that there is no evidence from which it could be found that Miss Lang was negligent in riding with Tews. More will be said on this phase of the case in passing upon the error

assigned upon the instruction as to the presumption of due care of a person killed in an accident. It is enough now to state that contributory negligence on the part of plaintiff's decedent does not appear as a matter of law. And defendant is not entitled to judgment notwithstanding the verdict.

It remains to determine whether the errors assigned on the rulings in regard to evidence received or excluded and the instructions given and refused necessitate a new trial.

The main error complained of is the rulings of the court excluding the offer of defendant to show that if the freight and passenger trains from Huron, South Dakota, to Chicago, Illinois, running through some 150 cities and villages were compelled to limit speed to six miles an hour within the boundaries of such municipalities, transportation would be unduly prolonged, and such limitation of speed would constitute an undue burden on interstate commerce. The court did receive all evidence offered which related to grade and tracks through Sleepy Eye, and to the character and condition of this crossing. It is conceded to be settled law that the court and not the jury is to pass on the question of the unreasonableness of the ordinance and its applicability to the particular crossing in view of the precautions taken by the railway company to protect travelers thereon from being run down by its trains. It is true that in our three cases above cited the defense to the speed ordinance was not made that it unduly burdened interstate commerce; but we think the excluded testimony would not materially have helped the trial court. In Lusk v. Town of Dora (D. C.) 224 F. 650, 654, so much relied on by defendant, the court held that the validity of the speed ordinance was for the court, to be determined upon the facts as disclosed from the conditions in the city and grade crossing where the collision occurred, and particularly with reference to the precautions taken by the railway company to protect such crossing. That was a case to enjoin the town of Dora from

enforcing its speed ordinance at a particular grade crossing. Many authorities are cited, and it is noteworthy that, after finding that the maximum speed fixed by the ordinance was an unreasonable burden upon interstate commerce and granting an injunction, it was so granted "upon condition that the plaintiffs [receivers of the railroad company], during the period of its operation, maintain, within the corporate limits of Dora, adequate protection against the hazards arising from the operation of trains across the town streets, at grade, to those using such streets, and the cause will be retained for the purpose of entertaining any application that may hereafter be presented by defendant to modify or dissolve the injunction, in the event the plaintiffs do not continue to supply adequate crossing protection after the passing of the decree." There was no error in excluding the proffered evidence. Defendant cites Cleveland, C. C. & St. L. Ry. Co. v. Grambo, 103 Ohio St. 471, 134 N. E. 648, 20 A. L. R. 1214. The reversal there was placed upon the ground that the court erroneously struck out the allegations in the answer of the railroad company alleging facts which, if proved, would render the speed ordinance pleaded in the complaint an undue burden on interstate commerce. The law stated in the opinion is not in conflict with that declared in this state in the Knobloch, Weyl, and Evison cases, *supra*. The court in the Grambo case refers to that of Chicago & Alton R. Co. v. City of Carlinville, 200 Ill. 314, 65 N. E. 730, 60 L. R. A. 391, 93 A. S. R. 190, as an extremely well considered case. It is; and cites with approval the decisions above mentioned from our court.

A new trial is asked on the ground that the court submitted the issue of willful and wanton negligence, neither pleaded nor proved. We agree with defendant that such issue was not pleaded and not proved; but we do not think the court submitted such an issue to the jury. The only language in the charge upon which defendant may suggest

that the court submitted willful or wanton negligence is this:

"Where a train is proceeding at a reasonable rate of speed it has the right of way over automobiles crossing such tracks, *and an engineer or fireman on such train who sees an automobile approaching the crossing has the right to assume, until the contrary becomes apparent, that the automobile will stop in time to avoid the accident, and such engineer is not required to slacken speed for the purpose of avoiding a collision until he realizes that a collision is imminent if he fails to do so. But when he sees that a collision is imminent it becomes his duty to do what is reasonably possible to avoid a collision.*"

The quoted part embraces appropriate requests to charge proffered by defendant. The claim that willful and wanton negligence was submitted is based only upon the part italicized. The fireman, on cross-examination, stated that, seated in the cab of the locomotive on the left or north side, he saw Tews' car going south over the tracks when the train was 150 to 200 feet west of the west side of Sixth street, that he at once blew the alarm whistle and kept it blowing until the car passed out of his view. We think the above part of the charge is far from submitting an issue of willful or wanton negligence. In this connection the fact may be noted that the court charged the jury that defendant had conclusively proved that the whistle was sounded and the bell was rung as required by law, and further that the driver, "Tews, was guilty of negligence which proximately caused or contributed to cause the accident."

Error is also assigned upon this part of the charge:

"She is dead. One who loses his life in an accident is presumed to have exercised due care for his safety. The presumption is comparable to that of right conduct, every person is presumed to do what is right, but this presump-

tion of due care on the part of the deceased may be overcome by ordinary proof by the greater weight of the evidence that due care was not exercised by her."

The instruction is technically incorrect in that the jury may understand therefrom that the presumption is the equivalent of evidence which defendant must meet and overcome, instead of charging that the presumption of due care vanishes when there is evidence of the care the decedent did take or omitted to take to avoid death, for when such evidence appears the jury must determine the fact, whether decedent used due care or was negligent, upon the evidence received without aid of or resort to the presumption. The function of legal presumptions is sufficiently treated in Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557, where was involved the presumption against suicide. But the fault in the instruction excepted to does not warrant the granting of a new trial, for an examination of the record leads to the conclusion that there is no evidence upon which the jury could base a finding of contributory negligence of decedent. She was not the driver or in control of the car, and the driver's negligence was not imputable to her. The two other persons in the car with decedent testified that they did not see the train, and all three survivors declared that they heard neither whistle nor bell. No other witness was in position to testify as to what Miss Lang either saw or heard. The burden was upon defendant to prove her negligence. We think it adduced nothing from which the jury could infer negligence on her part.

Error is assigned as to rulings in respect to the testimony of two witnesses, and upon several other instructions and refusals to give requested instructions, but in neither the brief nor in the oral argument are there any suggestions of error which might be prejudicial to defendant.

Assignments of error made without any argument or discussion whatever must be deemed abandoned.

The order is affirmed.

MR. JUSTICE STONE took no part.