## ROTH v. SWANSON.

No. 12876.

Circuit Court of Appeals, Eighth Circuit.

Nov. 3, 1944.

Alfred E. Rietz, of St. Paul, Minn. (Warren Newcome, of St. Paul, Minn., and William T. Faricy and Nelson J. Wilcox, both of Chicago, Ill., on the brief), for appellant.

John Edmund Burke, of St. Paul, Minn. (Julian E. Morten, of Redwood Falls, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment for the plaintiff (appellee), which was entered upon the verdict of a jury in an action brought to recover damages for the death of Colleen Swanson, who, on March 15, 1942, at the age of eight years, was killed when the automobile in which she was riding was struck by the engine of a passenger train of the Chicago and Northwestern Railway Company. The accident occurred in Walnut Grove, Minnesota (a village of about 900 inhabitants), at a point where the main line track of the railway company, which extends east and west through the village, crosses Sixth Street, which runs north and south. The paved portion of the street is 36 feet wide. The train involved in the accident was an eastbound passenger train, consisting of a steam locomotive, a tender, and five steel cars. It was due in Walnut Grove at 9:47 A. M. The train was on time and was not scheduled to stop. The day was cloudy and dark, with mist and fog in the air. Moisture was collecting on windshields and windows of automobiles. The headlight of the engine was on. There was some snow and slush on the roads. The temperature was about forty degrees· above zero. The train did not slow down as it entered the village. The automobile which was struck by the train belonged to Gust A. Swanson, a farmer who lived northeast of Walnut Grove. In the automobile were his two children, Dwaine Swanson, his son, the driver, who was nearly eighteen years of age, and Colleen Swanson. Donald Carlson, the young son of a nearby· farmer, was with them. The children were on their way to Walnut Grove to attend Sunday school. Shortly before the accident occurred, the automobile, which had come from the east on a highway parallel to and north of the railroad track, turned south on Sixth Street. The automobile was then about 150 feet north of the main track and was moving about eight or ten miles an hour as it approached the track. The automobile was driven or it skidded onto the main track, in front of the train. Apparently no part of the automobile crossed the main track. The engineer, who was on the right or south side of the cab of the engine and was looking ahead, did not see, and could not have seen, the automobile. The fireman, whose seat was on the left or north side of the cab, had left his seat, to attend the fire, when the· train was about 300 feet west of the place of the collision. He felt the jar of the collision, looked out of the window of the cab, and saw the automobile sliding along the north side of the train. He notified the engineer, who, with an emergency application of the brakes, brought the train to a stop about 1800 feet east of Sixth Street. The three occupants of the automobile were dead.

Attributing the death of his children to the negligence of the defendant (appellant), Gust A. Swanson, as Special Administrator of the estate of each of them, brought separate actions in the State District Court of Redwood County to recover damages for their deaths. See § 573.02, Minn.Stat.1941. The actions were removed· to the federal court by the defendant on the ground of diversity of citizenship. The plaintiff, in his complaint in each action, alleged that the train was operated at an excessive rate of speed; that the engineer failed to give the required warning of its approach by bell or whistle; and that a proper lookout was not kept. Other grounds of negligence were asserted, but passed out of the cases for lack of supporting evidence. The defendant denied the charges of negligence, and asserted that the sole proximate cause of the collision and of the death of the occupants of the automobile was the negligence of Dwaine Swanson, the driver.

The actions were tried together. At the close of the evidence, the defendant moved for a directed verdict in each case upon the ground that no actionable negligence had been shown. The court denied the motions, and submitted the issues to the

jury. The jury returned a verdict for the defendant in the action involving the death of Dwaine Swanson, and a verdict for the plaintiff in the instant case, involving the death of Colleen Swanson. Thereafter the defendant moved that the court set aside the latter verdict and grant the defendant judgment notwithstanding the verdict. The defendant also moved for a new trial or for a reduction of the verdict by the amount which, under the Wrongful Death Statute of Minnesota, would go to Gust A. Swanson. The court denied the motions. This appeal followed.

The defendant contends that there is an insufficient evidentiary basis for the verdict and judgment; and that it conclusively appears from the evidence that the defendant was not guilty of any of the charges of actionable negligence, and that the collision was due solely to the negligence of the driver of the automobile.

■ The applicable substantive law is that of the State of Minnesota. Flagg v. Chicago Great Western Ry. Co., 8 Cir., 143 F.2d 90, 92; Duluth, W. & P. R. Co. v. Zuck, 8 Cir., 119 F.2d 74, 76.

■ If, under the law of Minnesota, there was evidence which would justify a recovery by the plaintiff upon any of the grounds of negligence alleged, the trial court did not err in denying the motion of the defendant for a directed verdict and the motion for judgment notwithstanding the verdict. Thomson v. Stevens, 8 Cir., 106 F.2d 739, 740.

■ In considering whether the defendant was entitled to a directed verdict in this case, we must take that view of the evidence which is most favorable to the plaintiff and give to him the benefit of all inferences which reasonably may be drawn from the evidence. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 118; Flagg v. Chicago Great Western Ry. Co., 8 Cir., 143 F.2d 90, 92.

■ "* * * Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Richmond & D. R. v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642." Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233,

74 L.Ed. 720. It is only where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, that the court should direct a verdict. Gunning v. Cooley, supra, at page 94 of 281 U.S., at page 233 of 50 S.Ct., 74 L.Ed. 720.

■ In considering the sufficiency of the evidence to sustain a verdict, this Court cannot concern itself with the credibility of the witnesses nor the weight of evidence. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439, 444.

■■ If any of the charges of actionable negligence was supported by substantial evidence, the defendant was not entitled to a directed verdict. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.

■ We have reached the conclusion that the trial court did not err in denying the defendant's motion for a directed verdict and his motion for judgment notwithstanding the verdict.

■ A statute of the State of Minnesota provides:

"Every engineer driving a locomotive on any railway, who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded, at least eighty rods from any place where such railway crosses a traveled road or street, on the same level, except in cities, or to continue the ringing of such bell or sounding of such whistle at intervals until such locomotive and the train thereto attached shall have completely crossed such road or street, shall be guilty of a misdemeanor." Section 616.34, Minn.Stat.1941.

A violation of this statute is negligence per se. Judson v. Great Northern Ry. Co., 63 Minn. 248, 254, 65 N.W. 447, 449.

■ While it conclusively appears from the evidence in this case that the engineer sounded the whistle at some point west of the Sixth Street crossing, there is uncertainty as to the point where he ceased sounding it. The engineer testified that he sounded the "station whistle" when the train was about three-quarters of a mile west of the station in Walnut Grove. The station is approximately 300 feet west of

the place where the collision occurred. The engineer also testified that he sounded the crossing whistle when he was about a quarter of a mile west of the Eighth Street crossing (this crossing is two blocks west of the Sixth Street crossing), and that he continued to sound the whistle at intervals until the engine reached the west end of the station, which is approximately 350 feet west of the place where the collision occurred. The engineer's testimony as to the sounding of the whistle was corroborated by the fireman and other trainmen. The trainmen were interested witnesses, and their credibility and the weight of their evidence was for the jury. There was other evidence from which an inference might be drawn that the whistle ceased to sound at a point west of the Eighth Street crossing and so far away from the Sixth Street crossing as not to furnish an adequate warning to travelers approaching the tracks on that street. The engineer and the fireman both testified that the bell on the locomotive was kept ringing automatically while the train was passing through the town. Other witnesses, some of whom were near enough to the train so that they could have heard the bell had it been ringing and had they been attentive, testified that they did not hear it. The defendant contends that the evidence that the bell was not heard by persons who were not shown to have any interest in whether it was rung or not or to have been listening for train signals, was not substantial evidence that the bell was not rung. There is much force in the contention. See Chicago, St. P., M. & O. R. Co. v. Kroloff, 8 Cir., 217 F. 525, 530; Chicago & E. I. R. Co. v. Sellars, 8 Cir., 5 F.2d 31, 33; Bergman v. Northern Pac. R. Co., 8 Cir., 14 F.2d 580, 581, 582; Pere Marquette R. Co. v. Anderson, 7 Cir., 29 F.2d 479, 480; Union Pacific R. Co. v. Gaede, 10 Cir., 110 F.2d 931, 933; Flagg v. Chicago Great Western Ry. Co., 8 Cir., 143 F.2d 90, 93; Krause v. Chicago, St. P., M. & O. R. Co., 207 Minn. 175, 179, 290 N.W. 294, 295; Lawson v. Minneapolis, St. P. & S. S. M. R. Co., 174 Minn. 404, 408, 219 N.W. 554, 555; Engberg v. Great Northern R. Co., 207 Minn. 194, 197, 198, 290 N.W. 579, 582. The jury, however, was not compelled to believe the testimony of the engineer and the fireman as to the ringing of the bell. The rule in Minnesota presently appears to be that evidence that train signals were not heard by those who could and probably would have heard them if the signals were given, is substantial evidence that the signals were not given. See Polchow v. Chicago, St. P., M. & O. R. Co., 199 Minn. 1, 4, 270 N.W. 673, 674; Setosky v. Duluth, S. S. & A. R. Co., 173 Minn. 7, 8, 9, 216 N.W. 245; Fink v. Northern Pac. R. Co., 162 Minn. 365, 367, 368, 203 N.W. 47, 48; Willett v. Great Northern R. Co., 154 Minn. 10, 12, 191 N.W. 260; Zenner v. Great Northern R. Co., 135 Minn. 37, 39, 159 N.W. 1087, 1088; Lawler v. Minneapolis, St. P. & S. S. M. R. Co., 129 Minn. 506, 508, 152 N.W. 882; Cotton v. Willmar & Sioux Falls R. Co., 99 Minn. 366, 368, 369, 109 N.W. 835, 836, 837, 8 L.R.A.,N.S., 643, 116 Am.St.Rep. 422, 9 Ann.Cas. 935. Compare Union Pac. R. Co. v. Burnham, 10 Cir., 124 F.2d 500, 502. See also 44 Am.Jur., Railroads, § 622, page 881.

We would not be justified in ruling that the evidence of the plaintiff tending to substantiate his charge that the engineer failed to give the statutory warning signals was insufficient to make the issue one of fact, unless we were convinced that the trial court misapplied the applicable law in deciding that, under the evidence, the issue was for the jury. See Helvering v. Stuart, 317 U.S. 154, 162, 163, 63 S.Ct. 140, 145, 87 L.Ed. 154; MacGregor v. State Mutual Life Assur. Co., 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 846; Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713. We shall go no further than to say that we are not convinced that the trial court misapplied the law of Minnesota in ruling that the issue of the alleged failure to give the statutory warning signals was for the jury.

The defendant contends that if he is not entitled to judgment, he is entitled to a new trial. He argues that, under the instructions of the court, the jury was permitted to base a verdict upon charges of operating the train at an excessive rate of speed and failing to keep a lookout; that these charges were not proven; and that neither the speed of the train nor the failure to keep a lookout was shown to have any causal connection with the collision.

The theory upon which the case was submitted to the jury by the court is indicated by the following excerpt from the court's instructions:

"If you find that the employees of the defendant in operating the train failed to use ordinary care because of having operated the locomotive at an excessive speed

under the circumstances, or because of their failure to sound the whistle or ring the bell, or to keep a proper lookout ahead for travelers approaching the crossings on the public streets and highways in the village of Walnut Grove, then said employees were negligent and if such negligence was the proximate cause of the accident, then your verdict must be for the plaintiff in both cases; provided you further find that the deceased children were using ordinary care for their own safety at the time and place of the accident."

The general verdict of the jury may mean that the jury found that the statutory signals were not given by the engineer, and that the speed of the train was excessive, and that a proper lookout was not kept. On the other hand, the jury may have found that the statutory signals were given as testified by the engineer and others, and may have based its verdict solely on the speed of the train or solely upon the failure of the fireman to keep a proper lookout.

The crossing was not a blind crossing nor an extrahazardous one requiring gates or other safeguards. Lawson v. Minneapolis, St. P. & S. S. M. R. Co., 174 Minn. 404, 406, 219 N.W. 554, 555. It was a crossing with which the driver of the automobile was entirely familiar. It was not equipped with gates or other devices to signal the approach of trains, but had the usual cross-buck crossing sign. It was a dangerous crossing only in the sense that all such railroad grade crossings are dangerous. The defendant's evidence showed that at a point on Sixth Street fifty feet north of the main track there was an uninterrupted view of 3500 feet to the west along the track. One of plaintiff's witnesses testified that from a point on Sixth Street sixty feet north of the track he could see a train about 1,000 feet to the west. While the weather on the day of the collision affected visibility, the testimony of the plaintiff's witnesses showed that the train involved in the collision could be seen at a very considerable distance. One of these witnesses shortly before the accident saw "a train or a light" half or three-quarters of a mile away. Another of plaintiff's witnesses, who was standing on the station platform waiting for the mail to be thrown off the train, saw the train when it was a quarter of a mile west of the station, and watched the train from that time until the collision oc-

curred. We think there was nothing in the weather or the condition of the streets which would require the engineer to reduce the speed of his train below what was ordinarily reasonable and proper, in anticipation that motorists approaching the main track of the railroad where it crosses Sixth Street would be unable to see the train in time to stop. Compare Hoyum v. Duluth, W. & P. R. Co., 203 Minn. 35, 40, 279 N.W. 729, 731.

The speed of the train was variously estimated. The minimum estimate was 35 miles an hour, and the maximum 60 miles an hour. It is obvious that some of the estimates made by witnesses were pure guesses. The trainmen's opinions were that the speed was from 35 to 45 miles an hour. The plaintiff's witness who stood on the station platform and watched the train, estimated its speed at 40 to 45 miles an hour. The automobile was driven or skidded onto the track almost as the locomotive reached the crossing.

There appears to be little, if any, basis in the evidence for supposing that the collision would not have occurred, or that the result would have been different, if the train had been going slower. The Supreme Court of Minnesota, however, in Lawler v. Minneapolis, St. P. & S. S. M. R. Co., 129 Minn. 506, 509, 152 N.W. 882, 883, said:

" * * * The court properly left it to the jury to find the approximate speed of the train. It further appears that defendant maintained no gates at this crossing, nor a flagman to warn pedestrians of the approach of trains, nor any crossing bell, often found at crossings of this kind. In this situation there would seem, within our decisions, no particular difficulty in holding that the question whether the operation of the train over the crossing at a high and dangerous rate of speed was an act of negligence on the part of defendant, was one of fact."

The Lawler case involved a collision at a grade crossing in a village and is closely analogous to this case. It was contended there, as it is contended here, that in no event was the high speed of the train the proximate cause of the collision. It seems probable that the Supreme Court of Minnesota has to some extent receded from the view expressed in the Lawler case. In Molden v. Minneapolis, St. P. & S. S. M. R. Co., 160 Minn. 471, 473, 200 N.W. 740, 741, which involved a collision between a

train and an automobile at a village grade crossing, the court said:

"* * * High speed may not in itself constitute negligence, but, when considered in connection with the absence of warnings of a train's approach to a dangerous city or village crossing, it may be of much significance."

And the court also said, at page 474 of 160 Minn., at page 741 of 200 N.W.:

"At least, absence of such safety devices and measures [automatic signals, gates or a watchman] bears upon the question of negligence in running at a high speed. Lawler v. Minneapolis, St. P. & S. S. M. R. Co., 129 Minn. 506, 152 N.W. 882; Zenner v. Great Northern R. Co., 135 Minn. 37, 159 N.W. 1087."

In Lang v. Chicago &. N. W. R. Co., 208 Minn. 487, 295 N.W. 57, involving a collision between a train and an automobile, which occurred in Sleepy Eye, Minnesota (a city of 2700 people), at a grade crossing unprotected by safety devices, the train was traveling at a greater speed than the six miles per hour permitted by city ordinance. In that case the Supreme Court of Minnesota answered the contention that speed was not shown to be the proximate cause of the collision by saying at page 490 of 208 Minn., at page 59 of 295 N.W.: "We think it was for the jury to determine whether or not the impact of the train would have caused any injury to Miss Lang had it not been running at more than six miles an hour."

The case of Hoyum v. Duluth, W. & P. R. Co., 203 Minn. 35, 279 N.W. 729, upon which the defendant relies, involved a rural grade crossing where there was a wig-wag signal. The case perhaps indicates a somewhat changed attitude on the part of the Supreme Court of Minnesota toward speed as a proximate cause of a collision between a train and an automobile at a grade crossing. In its opinion in that case (at pages 38 and 39 of 203 Minn., at page 730 of 279 N.W.) the court quotes with approval the following language from the case of Haller v. Pennsylvania R. R., 306 Pa. 98, 103, 104, 159 A. 10, 12:

"A speed of 40 miles an hour is not sufficient by itself or when associated with any other fact or facts present in this case to support a finding of negligence. Before the question of speed at a crossing can be submitted to a jury, it must be in evidence that the speed testified to was greater than

was usual at that place or that special circumstances existed there at that time and were known, or should have been known, to defendant or its servants which rendered necessary a lower speed at that point. * * * If railroads must, in order to escape the charge of negligence, moderate the speed of their trains to less than 40 miles an hour at every crossing where vehicles are likely to pass frequently, there would be few, if any, railroad crossings where this slackening of speed would not be required, and yet such a rule would be inconsistent with the requirements of modern transportation."

See and compare Engberg v. Great Northern R. Co., 207 Minn. 194, 290 N.W. 579.

▇▇▇▇ We are not convinced, however, that the court below erred in ruling that, under Minnesota law, the questions whether the speed of the train, under the circumstances shown by the evidence, was excessive, and whether, if it was excessive, it constituted a contributing cause of the death of Colleen Swanson, were questions of fact for the jury.

▇▇▇▇ So far as the omission of the fireman to keep a lookout is concerned, we shall assume, without deciding, that the jury might properly have found from the evidence that it was his duty to remain on his seat in the cab of the locomotive and to look ahead at all times when the train was passing through Walnut Grove. The jury could properly have found that if the fireman had done so, he would have seen the automobile before it reached the track. There is, however, no basis in the evidence for believing that if the fireman had seen the automobile coming toward the track, the collision could have been avoided. The fireman would have been under no duty to notify the engineer of the approach of the slowly moving automobile until such time as it became apparent that the driver was not going to stop and that a collision was imminent. Asklund v. Chicago Great Western R. Co., 176 Minn. 214, 217, 218, 223 N.W. 95, 96; Engberg v. Great Northern R. Co., 207 Minn. 194, 200, 290 N.W. 579, 583. It seems obvious that by that time there would have been nothing that the engineer could have done to avoid the collision. See Hoyum v. Duluth, W. & P. R. Co., 203 Minn. 35, 39, 40, 279 N.W. 729, 731. We think that the issue whether the failure to keep a proper lookout was a

proximate cause of the collision was not a question of fact for the jury.

 Where several issues of fact are tried, and any one of them is erroneously submitted to the jury over the objection of a defendant, and a general verdict is returned against him, he is entitled to have the verdict set aside and to have a new trial. This is because it is impossible to say whether the verdict was based upon an issue which was properly submitted to the jury or upon an issue which was improperly submitted. What Cheer Coal Co. v. Johnson, 8 Cir., 56 F. 810, 813; St. Louis, I. M. & S. R. Co. v. Needham, 8 Cir., 63 F. 107, 114; Chicago, St. P., M. & O. R. Co. v. Kroloff, 8 Cir., 217 F. 525, 528; Atlantic Coast Line R. Co. v. Tiller, 4 Cir., 142 F.2d 718, 722; Lindemann v. Chicago, R. I. & P. R. Co., 154 Minn. 363, 191 N.W. 825.

 Since upon a new trial of this case there will probably arise again a conflict in the evidence as to the speed of the train, it seems advisable to refer to the admission of certain evidence which the defendant asserts was incompetent. A Dr. Ferguson testified that at least thirty minutes after the accident he overheard a conversation between the conductor and the engineer of the train, at or near the station; that he heard the engineer ask the conductor if he had reported the accident; that the conductor said that he had; that the engineer then asked the conductor "at approximately what speed he had reported that the train was going, and the conductor said 30 miles an hour and the engineer said no, it was at least 55 miles an hour." This evidence was received over the objection of the defendant that it was incompetent and no part of the res gestae. In Vicksburg & M. R. Co. v. O'Brien, 119 U.S. 99, 7 S.Ct. 172, 30 L.Ed. 299, the Supreme Court of the United States ruled that such evidence was incompetent. Although the decision was by a divided court, we do not find that the case has as yet been overruled. It is cited with approval in Schendel v. Chicago, M. & St. P. R. Co., 158 Minn. 378, 381, 197 N.W. 744, 746. The plaintiff contends that, even if the evidence was inadmissible under the rules applicable in the federal courts, the evidence was admissible under Minnesota law. The plaintiff is entitled to the benefit of the more favorable rule. See Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The question whether this statement of the engineer as to the speed of the train would be regarded in the Minnesota courts as a res gestae statement is perhaps not entirely free from doubt. It seems to us, however, that there is no basis for regarding the statement of the engineer as a spontaneous utterance induced by a feeling of excitement engendered by the accident and made without opportunity for deliberation. See Arnold v. Northern States Power Co., 209 Minn. 551, 562, 563, 297 N.W. 182, 188. There is nothing to indicate that the statement was anything more than an expression of opinion made half an hour after the collision had occurred, and away from the place where it occurred, to a fellow employee with reference to his report to the railway company. We think that the evidence should not have been admitted as affirmative proof of the speed of the train. See Schendel v. Chicago, M. & St. P. R. Co., 158 Minn. 378, 381, 197 N.W. 744, 746; Smith v. Emporium Mercantile Co., Inc., 190 Minn. 294, 298, 251 N.W. 265, 266.

 One additional matter should perhaps be mentioned. The defendant contends that the evidence conclusively showed that Dwaine Swanson was guilty of contributory negligence; that in driving the automobile he was to be regarded as the agent and servant of his parents and acting on their behalf; and that therefore his negligence is imputable to them, and the plaintiff is not entitled to recover, since the action is for the benefit of the parents. The defendant also contends that, in any event, Dwaine Swanson was the agent or servant of his father and that the verdict should be reduced to the extent of the father's share. This argument is based largely upon the evidence of the existence of an informal arrangement between the Carlson and Swanson families, the effect of which was that the Swanson automobile would be used by Dwaine Swanson to take the children to Sunday school on one Sunday and the automobile of the Carlsons would be used for that purpose by Mr. Carlson the following Sunday. We think that under the pleadings this question was not in the case. See Rule 8(c), Federal Rules of Civil Procedure.

The judgment is reversed and the case is remanded to the District Court with directions to grant a new trial.