## CARRIE SIMONSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

April 19, 1912.

Nos. 17,378—(31).

**Negligence — contributory negligence.**

In this action to recover for the death of plaintiff's intestate, claimed to have been caused by the negligence of defendant, it is *held:*

1. Whether defendant was negligent was on the evidence a question for the jury.

2. It does not conclusively appear from the evidence that plaintiff's intestate was guilty of contributory negligence.

[1] Reported in 135 N. W. 745.

Action in the district court for Ramsey county by the administratrix of the estate of Ole C. Simonson, deceased, to recover $5,085 for the death of her intestate. The case was tried before Kelly, J., who denied defendant's motion for an instructed verdict, and a jury which returned a verdict in favor of plaintiff for $2,500. Defendant's motion to set aside the verdict and for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed with directions to enter judgment for plaintiff on the verdict.

*Samuel A. Anderson* and *A. F. Storey,* for appellant.

*M. D. Munn* and *J. L. Erdall,* for respondent.

BUNN, J.

This is an action brought by plaintiff, as administratrix of the estate of Ole C. Simonson, deceased, to recover damages for his death, alleged to have been caused by defendant's negligence. The answer denied negligence on defendant's part, and alleged that Simonson was guilty of contributory negligence. The issues were tried and submitted to the jury, and a verdict for $2,500 in favor of plaintiff returned. The trial court granted defendant's motion for judgment notwithstanding the verdict, and plaintiff appealed from the judgment entered pursuant to such order.

The questions before us are whether it conclusively appeared either that defendant was not negligent or that plaintiff was guilty of contributory negligence.

It is conceded that Simonson was killed by being struck by a passenger train of defendant at a crossing in the village of Kimball Prairie. Defendant's track runs east and west, and crosses Main street at right angles and on a level. The station is four hundred seventy two feet west of the crossing on the north side of the track. A house track runs from the station east, and across Main street fifty feet north of the main track. At the time of the accident there was a freight car standing on the house track, with its east end twenty feet west of the traveled part of the street. Simonson, on the afternoon of December 6, 1910, was seated in an empty wagon driving south-

erly on Main street on his way home. He was seen approaching the crossing, when within twenty feet of the house track, and again after his team and wagon had crossed the house track. The train which struck him was running at a speed of sixty miles an hour from the west. It was two or three hours late. There is abundant evidence to justify a finding that no whistle was sounded, except a faint blast blown before the engine reached the station, and that no bell was rung. It is clear that, owing to the obstruction of the box car and other obstructions, Simonson could not see the train from any point until after he had passed the box car. This would be when his horses had crossed the house track and were within forty feet of the main track. Had he looked then, he could have seen a train as far west as the station; but the evidence is conflicting as to whether he would have a view past the station from this point, or until he was quite near the main track. The fireman, as the engine passed the station, saw the team and wagon. He testified that the hind wheels of the wagon were about going over the house track, and that the horses were nearly thirty feet from the main line.

1. As to the negligence of defendant, the great speed of the train and the absence of warning signals clearly made the question for the jury.

2. The learned trial court held that Simonson was guilty of contributory negligence as a matter of law. The basis of this conclusion was that when he entered the house track, with his team under perfect control, he could have seen the train approaching from the west for a distance of over five hundred fifty feet, and that to avoid the accident it was only necessary to stop his team. If the facts upon which the trial court's conclusion is based are conclusively shown by the evidence, the order granting judgment should be sustained. But does it conclusively appear that Simonson could see west for such a distance, when he emerged from behind the box car, that he would have seen the train, had he then looked, that his team was under perfect control, and that he could have stopped it after perceiving his danger?

We must apply the strong presumption that Simonson used due

care. No witness testified that he did not look to the west the moment he had a view in that direction, and we must presume that he did. We think there is evidence to justify the jury in finding that he could not see beyond the station. If the train was then not in sight, it cannot be said that he was bound to wait or look again. He had no reason to expect a train at this hour that would crash through the village at sixty miles per hour without stopping at the station. If, on the contrary, the engine had passed the station, and he saw the train within four hundred seventy or four hundred feet of the crossing, and approaching at the rate of eighty feet or more per second, we think it should not be said as a matter of law that he was bound to find means to avoid the accident. It would take the train perhaps five or six seconds to reach the crossing.

There is evidence to show that the team was frightened, and that Simonson did not have them under control after they crossed the house track. The danger was so imminent, the time so short, that it seems too much to demand of Simonson the calm judgment and quick action necessary to save himself. It was for the jury, rather than for the court, to say whether he could have stopped his team. There is evidence tending to show that he tried to do so. The fireman testified that when he saw Simonson the horses were excited, and that, although he saw him at the first moment it was possible to do so, and he tried to attract his attention, "it was, of course, no use." Under all the circumstances shown by the evidence, we are of the opinion that it did not conclusively appear that Simonson could have escaped the collision by the exercise of reasonable care. It was a question for the jury, and judgment notwithstanding the verdict should not have been ordered.

Judgment reversed, with directions to enter judgment for plaintiff on the verdict.