## NELLIE F. GREEN v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 31, 1913.

Nos. 18,289—(81).

**Accident at highway crossing — contributory negligence question for jury.**
> In a collision between a railway passenger train and an automobile at a village grade crossing, the driver, sole occupant of the automobile, was killed.  In this action to recover damages for the next of kin of the person killed, it is *held* upon an examination of the evidence that his contributory negligence was a jury question.

Action in the district court for Marshall county by the adminis-

1 Reported in 143 N. W. 722.

Note.—The question of the care required of a driver of an automobile at a railroad crossing, is treated in notes in 21 L.R.A.(N.S.) 794 and 29 L.R.A.(N.S.) 924.

tratrix of the estate of Charles M. Green, deceased, to recover $5,-000 for the death of her intestate and $500 for the destruction of the automobile in which he was riding. The answer alleged that the collision between defendant's train and the automobile which deceased was operating was not caused through any negligence on its part, its agents or servants, in the operation of the train, but by lack of ordinary care on the part of deceased; that deceased recklessly operated his automobile without keeping any lookout for trains as he approached the railroad crossing and by his negligence directly contributed to the collision which ensued. The case was tried before Grindeland, J., who, when plaintiff rested, denied defendant's motion to dismiss the action, and a jury which returned a verdict for $5,200 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Samuel A. Anderson* and *E. A. Brekke,* for respondent.

HOLT, J.

Plaintiff's intestate was killed in a collision between defendant's train and an automobile he was driving. This action was brought to recover damages. Plaintiff prevailed, and this appeal is by defendant from an order denying its motion in the alternative for judgment or a new trial.

Appellant contends that it conclusively appears that the negligence of plaintiff's intestate, Charles M. Green, caused or contributed to the collision. No other question is presented in this court.

The collision occurred in Argyle, a village in this state of some 800 inhabitants. Defendant's railway runs north and south through the village. About two-thirds of the population reside west of the tracks. The depot is on the west side of the main track, the platform eight feet wide coming within three feet of the west rail. On the east of the main track is the industry track, but since its location did not bear on the accident it need not be noticed. On the west side of the depot is also a platform along which runs the passing track. One of the main streets of the village called Fourth street

runs east and west crossing these tracks about 300 feet north of the depot, and another parallel therewith called Second street crosses these tracks 367 feet south of the depot. The passing track leaves the main track about 300 feet south of Second street and begins to converge towards it before crossing Fourth street. At Second street the space between the two tracks is about 40 feet with a dip in the roadway. The sidewalk on the north side of the roadway is level. On the westerly side of the passing track about 200 feet north of Second street is a loading incline, about 300 feet further north a coal shed, and some 200 feet further a beer storehouse. A section house is situated about half a mile north of the depot and west of the main track. These structures, together with cars which might be on the passing track, obscure the view of a train coming from the north to one approaching the railroad crossing from the west upon Second street. Immediately west of the passing track, and the structures adjacent to it, Pacific avenue runs north and south. On the west side of the avenue are the business places of the village.

A little before 10 o'clock on the evening of July 8, 1910, a still but dark night, Mr. Green was seen cranking his small Brush runabout automobile. The machine was standing headed north on the west side of Pacific avenue, about 75 feet north of Second street. Green had some difficulty in starting the machine but finally succeeded. He stepped in, turned around toward the right, thence ran down to Second street, turned to the left and proceeded to cross defendant's tracks. At this time some freight cars were standing on the passing track, and a string of three of these came down to within 10 or 20 feet of Second street. Mr. Green was running the automobile on low speed, and when so run this kind of a machine is very noisy. All who saw the collision tesify that he was going very slow, and at from 2 to 3 miles per hour. At the moment the front of the automobile came near or upon the west rail of the main track, defendant's passenger train known as the Winnepeg Flyer, coming in from the north, running at a speed of not less than 30 miles per hour, struck the machine and hurled it some 75 feet in a southwesterly direction. Mr. Green was also thrown some distance, receiving injuries resulting in death within 36 hours.

We have no hesitancy in saying that, if Mr. Green is to be charged with contributory negligence as a matter of law, it must be rested on what he could have seen and heard after he came within the space between the west rail of the main track and a parallel line 20 feet west thereof. It is true that several persons in the vicinity of the deceased testify to hearing the station whistle of the Flyer, but there is evidence that Green was then driving his noisy machine which might well have prevented his hearing the whistle sounded more than half a mile away from him. One witness evidently believed that Green was unconscious of the approach of the train for he shouted a warning to him, but thought it fell short of being heard. The other eye witnesses to the collision also evinced an apprehension of an accident, for they stopped to watch Green. He was a resident of North Dakota and, as far as the record shows, had never been in Argyle but once before this trip. It does not appear that he knew when the trains were to be expected in Argyle, or that any would pass through at high speed, without stopping. While turning around and driving south on Pacific avenue there was no occasion to look to the north for a train, even if he could have seen it, and this is by no means made clear. From the time he turned east onto Second street and until within 18 or 20 feet of the place of accident, the evidence leaves it very much in doubt whether at any point he could have discovered the approaching train by looking toward the north because of standing cars on the passing track, telegraph poles, buildings and obstructions.

It is however clearly demonstrated that at a point in the roadway of Second street 20 feet west of the west rail of the main track one can look past the depot when the platform thereof is clear and see a person standing in the center of the main track at any point up to 731 feet north of Second street. But it is to be noted that on the north side of Second street was a sidewalk, somewhat higher than the roadway, having stanchions and railings some two or three feet high. And as already stated there was quite a depression in the driveway between the two tracks. Green was seated in a low automobile. The platform of the depot is higher than the surrounding ground and the rails of the track. And at the time in question half

a dozen men and women were standing on this narrow platform. It is easy to understand how a group of people thus standing might obstruct Green's view of the train, seated as he was, until the front of the machine was within striking distance of a locomotive passing over the track.

Appellant insists that Green knew of the train coming, for it produced a witness who testified that, when he called Green's attention to the fact that the Flyer was coming as the machine was being cranked, deceased said he thought he could make it; that is, cross ahead of the train as the witness understood. But the presence of this witness at that time is disputed by two men who stood within 8 or 10 feet of Green when he was cranking the machine, and the story of this same witness as to what he did and had time to do thereafter before the collision contains such inherent marks of improbability that the jury might well discredit his whole testimony. The five witnesses who observed Green just prior to the collision substantially agree that there was nothing in his conduct to indicate that he was conscious of the approach of a train as he neared the fatal place, or was trying to beat it for the crossing. The very fact that he continued on very low speed, at a slow pace, is persuasive proof to the contrary. Green is dead. What observations he made, and exactly what he did will never be known. The night was dark, and what light there was, by which the persons who saw the accident could observe it, came from an arc light at the intersection of Pacific avenue and Second street. The headlight on the locomotive was a kerosene lamp, and none of these witnesses state that the reflection from the headlight in any manner was seen to cast such light on the place of accident that Green's movements could be seen any better by reason thereof.

However, it must be admitted that the deceased, although a comparative stranger in the village, knew that he was about to cross a railway track, he knew that he could not well depend on his sense of hearing to warn him of approaching trains while the engine of his automobile was running, therefore it became the more imperative that he use his sense of sight to the utmost. Schneider v. Northern Pac. Ry. Co. 81 Minn. 383, 84 N. W. 124. It is also true that none

of the witnesses saw Green turn his head as he was driving along the street but the fact must not be lost sight of that these persons were all over 150 feet away from the point of collision and this was over 100 feet away from the street light mentioned. At such distance and with such light, and when a glance up the track might consume but a fraction of a second a court ought not to take upon itself to say that fair-minded men may not conclude under all the evidence that Green did look and listen for approaching trains as cautiously as the ordinary prudent person would do in a like situation.

The rule applicable when the injured person is dead and cannot be heard is well stated in Lewis v. Chicago, St. P., M. & O. Ry. Co.. 111 Minn. 509, 127 N. W. 180: "The undisputed evidence must clearly and fully rebut every reasonable presumption that he was in the exercise of due care. * * * Nevertheless careful men are sometimes careless, and the presumption must yield to clear proof of negligence." See also Knudson v. Great Northern Ry. Co. 114 Minn. 244, 130 N. W. 994; Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752, Anderson v. Duluth & Iron Range R. Co. 116 Minn. 346, 133 N. W. 805. We conclude that it was for the jury to say whether the presumption that Green used due care is clearly rebutted by the evidence. Appellant contends that a person driving an automobile is in the control of his movements as readily as if walking. And in cases of a pedestrian it has been held that, if within a step or so there is opportunity to look and discover the impending danger, and it is not taken advantage of, contributory negligence exists. Carney v. Chicago, St. P., M. & O. Ry. Co. 46 Minn. 220, 48 N. W. 912; Clark v. Northern Pac. R. Co. 47 Minn. 380, 50 N. W. 365, and Schneider v. Northern Pac. Ry. Co. supra. But we think there is quite a difference between a person walking and one driving an automobile. The different movements in the handling of levers, clutches and brakes, and the liability of an automobile engine to stall are all matters which complicate its control.

There is no conflict in the record as to the giving of the station signal whistle about half a mile or more north of the station, but the evidence is such that it was for the jury to say whether any other whistle was blown or the bell run until the moment of collision. If

the jury found that no bell was rung and no whistle blown for the crossings south of the place where the station whistle was sounded, it would have some bearing on the conduct of Green.

While it must be admitted that this is a border-line case, we feel after a careful examination of the testimony and exhibits consisting of a plat and photographs of the streets, buildings and tracks mentioned, that it was for the jury and not the court to say whether the presumption that Green used due care was clearly rebutted by the evidence. It was left to the jury. The verdict is, in our judgment, fairly supported. The facts of this case, in our opinion, are no more persuasive of the existence of contributory negligence than were the facts held to be for the jury in Simonson v. Minneapolis, St. P. & S. S. M. Ry. Co. 117 Minn. 243, 135 N. W. 745.

Order affirmed.