## NILS J. PETTERSON v. BUTLER BROTHERS.[1]

December 12, 1913.

Nos. 18,233—(103).

**Release of claim — fraud.**

1. Plaintiff, an employee of defendant, had his foot crushed by a dump-car used by defendant in its work of "stripping" a mine. He made a settlement for the injury and executed a full release to defendants. Subsequently he brought this action and recovered a verdict. Evidence examined and *held* sufficient to sustain the findings of the jury that defendants were negligent and that the release was vitiated by fraud.

**Request to charge.**

2. Where the court fairly informs the jury as to the weight of evidence necessary to impeach such release, the refusal to state the rule in the language of a proffered request is not error.

Action in the district court for St. Louis county to recover $15,000 for personal injury received while in the employ of defendant. The answer, among other matters, alleged that plaintiff and defendant by mutual agreement adjusted and settled the claim against defendant, and pursuant to such adjustment defendant paid to

[1] Reported in 144 N. W. 407.

---

Note.—On the question of the right in an action at law to attack release for fraud, see note in 20 L.R.A.(N.S.) 915.

plaintiff in money the amount demanded by him, and he received and accepted the same in full payment of his cause of action, and then executed and delivered to defendant a paper writing acknowledging payment of such sum in full settlement. The reply set up the statements and representations made to plaintiff by defendant's agent for the purpose of procuring a settlement, and alleged that the statements and representations made by defendant were false and untrue and defendant well knew that each of them was false and untrue. The case was tried before Dibell, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict of $3,211.71 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*P. J. McLaughlin* and *Alexander Marshall,* for appellant.
*Andrew Nelson* and *George B. Sjoselius,* for respondent.

TAYLOR, C.

Plaintiff recovered a verdict for personal injuries. An alternative motion for judgment notwithstanding the verdict or for a new trial was made and denied, and defendants appealed.

Defendants were engaged in stripping the overlying earth and rock from the ore deposits in the Grant iron mine near Buhl, and plaintiff, a young man 27 years of age, was employed by them in this work. The material removed was loaded upon trains of dump-cars by a steam shovel and then hauled away by a locomotive. The boulders too large to be loaded by the steam shovel were broken up with charges of dynamite. These charges were usually exploded during the noon hour, and employees who brought lunches and remained in the pit while eating them sought places where they would be protected from the rock and other débris thrown by the blasts. On the day of the accident, a train of dump-cars, with the engine attached, was standing near the steam shovel when the crew quit work at noon. Warning had been given that blasts were about to be fired; and several employees including plaintiff went to the opposite side of the train from the blasts, seated themselves under the edge of the cars upon a bank of earth sloping toward the railway track, and

began eating their lunches. At this time the engineer, deeming his engine too near the blasts for safety, started the train. Plaintiff, in attempting to get up the sloping bank from under the edge of the car, had his foot caught and crushed by the wheels. He was removed to a hospital and his foot amputated near the instep. Nearly a year later it was necessary to make a further amputation near the heel.

Plaintiff brought suit against defendants for the injuries sustained. Defendants were insured against liability for such injuries and the defense of the action was assumed by the insurance company. The office of the insurance company was in the city of Virginia. The trial was set for November 15, 1911, at Hibbing. On the day before the date set for the trial, plaintiff accompanied one Karlson, an emissary of the insurance company, to Virginia with a view of making a settlement. They found the office of the insurance company closed and all the officials absent. At Karlson's invitation plaintiff went to Karlson's home in Virginia and remained there for several days. On November 16, 1911, the insurance officials, who had been at Hibbing attending court and had caused plaintiff's action to be dismissed for want of prosecution, returned to Virginia; and a settlement was effected on that date, by which plaintiff received $735 and executed a full release of all claims against defendants. A year later he began the present action. Defendants contend:

(1) That the finding that they were negligent is not sustained by the evidence.

(2) That plaintiff is barred from recovering by the release executed November 16, 1911.

(3) That the court erred in the instructions given to the jury.

1. Whether defendants were negligent depends upon whether they gave the customary warnings before starting the train. There is the usual conflict in the evidence. Defendant's witnesses testify that the warnings were given; plaintiff and his witnesses that no warnings were heard. The question was fairly submitted to the jury and the evidence is sufficient to sustain their conclusion. Defendants do not seriously contend to the contrary.

2. The doubtful question in the case is whether the evidence is sufficient to sustain the conclusion of the jury that the release was obtained by fraudulent misrepresentations. At the time of executing the release, plaintiff knew and fully understood that he was relinquishing and satisfying all claims for damages on account of his injury, in consideration of the amount then paid him. A somewhat fuller statement of the circumstances is perhaps necessary for a proper understanding of the situation.

Plaintiff and defendant's foreman, Charley Johnson, were both natives of Sweden and had been friends for a number of years in the old country. Johnson, who was several years older than plaintiff, came to America, and, after he had become foreman in charge of the work at the Grant mine, seems to have promised plaintiff a job. Plaintiff came from Sweden direct to Buhl, arriving on May 8, 1911, and was given work in the mine by Johnson on May 10. The accident occurred on May 23. Plaintiff could talk no English and had no previous acquaintance with anyone in this country except Johnson. After plaintiff had been removed to the hospital, the insurance company employed Karlson, who has been previously mentioned and who resided at Virginia where the company had its offices, to act as interpreter for them in their dealings with plaintiff, and apparently to keep them informed as to his condition and to report to them concerning the terms upon which a settlement could be effected. Karlson made it a point to see plaintiff frequently and appears to have secured his confidence. Plaintiff at times discussed with Johnson and at other times with Karlson the advisability of making a settlement, but does not appear to have discussed that question with anyone else. While he knew that Johnson was foreman for defendants, he probably did not know that Karlson was employed by the insurance company otherwise than to act as interpreter occasionally. He evidently considered both as his friends and was influenced by their advice which was to the effect that he had better make a settlement. On the day before the date set for the trial, Karlson had a talk with him at Buhl and as a result of this interview, plaintiff, without the knowledge of his attorney, went with Karlson to Virginia to see the insurance company

with reference to a settlement, instead of going to Hibbing for the trial. After arriving at Virginia, Karlson called up the insurance company by telephone but received no answer as the office was closed. As already stated the insurance officials were at Hibbing to attend the trial. It is evident that plaintiff did not know this and perhaps Karlson did not. Karlson took plaintiff to his home as a guest and treated him as a personal friend. After the settlement had been effected, plaintiff still remained with Karlson for some days, apparently to make sure that his attorney, who was a nonresident, would leave without learning of his whereabouts or of the settlement.

In support of the claim that the release was vitiated by fraud, plaintiff urges his ignorance of the language, laws and customs of this country, and the inadequacy of the amount received; that it was represented to him that the doctor had reported that his foot would be well so that he could go to work in about three weeks after the date of the settlement, when in fact his condition was such that it was necessary to undergo a second amputation six months later; and that it was represented to him that, as the accident occurred at the noon hour when he was not actually at work, his chance to recover was poor, and, if he should recover, it would be only after a delay of several years.

The evidence to establish fraud is not very satisfactory when measured by the rule that the proof must be strong and convincing to impeach a written instrument knowingly executed. Yet in view of plaintiff's situation, and of the fact that knowledge of the negotiations was kept from his attorney, and of the fact that his only advisers were Karlson and Johnson, one an employee of defendants and the other of the insurance company, and of the fact that the amount received was not adequate compensation for such an injury, and of the evidence as to representations and other circumstances, we are not prepared to say that the jury were not justified in finding that he had been overreached to such an extent as to avoid the release. We think it was a question for the jury, and that there is no sufficient reason for disturbing their conclusion after it has been approved by the trial court.

3. Defendants contend that the charge does not point out sufficiently "the distinction between the evidentiary value of the written instrument" (the release) "and mere parol testimony." They assign as error the refusal of the court to give the instruction upon that point requested by them; and also assign as error a statement bearing upon that point given in the general charge. If the general charge taken as a whole fairly informed the jury as to the weight of evidence necessary to impeach the release, neither assignment is well taken. The court said: "The release is in writing and it is signed. The plaintiff knew what he was doing. To justify a finding of actual fraud by the defendant in getting it the evidence must be such as to satisfy you by a fair preponderance of the evidence that fraud was practiced and was effective. Fraud is not presumed against the execution of a written instrument. It is not presumed that fraud induced it. To justify invalidating it for fraud the evidence of fraud must be clear and satisfactory to your minds, such as to convince you that fraud was practiced, not merely by way of suspicion, or surmise, or unjustifiable inferences, but by substantial evidence inducing well founded belief in your minds."

From this statement defendants separate out the clause, "To justify a finding of actual fraud by the defendant in getting it the evidence must be such as to satisfy you by a fair preponderance of the evidence that fraud was practiced and was effective," and insist that this assigns no greater force to the release as evidence than is assigned to parol testimony. But the charge must be taken as a whole and, when so considered, we think it is not open to the objection made. If the correct idea is clearly conveyed to the jury, the precise form of words used is not important. In giving a rule embodied in a request, the court need not necessarily clothe the rule in the language of the request. The court had previously instructed the jury somewhat in detail to the effect that the release was a bar to the action unless procured by fraud; and that plaintiff must prove that he was induced to execute it by false and fraudulent representations made for the purpose of deceiving him, before its effect as a bar could be overcome. They also were told immediately after the statement to which exception is taken, that to justify invalidat-

ing the release the evidence of fraud must be clear and satisfactory, and such as to convince them that fraud had been practiced in procuring it. They were not left with the impression that a mere preponderance of the evidence was sufficient, but with the impression that the evidence must be so substantial and convincing as to remove the question from the field of suspicion and surmise.

The other exceptions to the charge are based upon the assumption that the jury might misunderstand or misapply the statements made. We think that the instructions were proper and not likely to mislead.

The various questions involved were submitted to the jury fairly and clearly, the evidence is sufficient to sustain the verdict, and we find no errors.

Order affirmed.