NORTHERN PAC. RY. CO. v. HAUGAN
(three cases).
Nos. 13946–13948.

United States Court of Appeals
Eighth Circuit.

Oct. 12, 1950.

474

Chester G. Rosengren, Fergus Falls, Minn. (L. B. daPonte, Earl F. Requa, St. Paul, Minn., and Dell, Rosengren & Rufer, Fergus Falls, Minn., on the brief), for appellant.

Philip R. Monson and Thomas S. Donoho, Fergus Falls, Minn., for appellees.

Before JOHNSEN and COLLET, Circuit Judges, and HARPER, District Judge.

HARPER, District Judge.

The Northern Pacific Railway Company, defendant below, has appealed from judgments entered by the United States District Court for the District of Minnesota on verdicts in favor of the plaintiff in three causes tried together, arising out of a railroad crossing accident in the village of Perham, Minnesota, on October 13, 1946, in which accident Emil Haugan was killed, and his wife and son suffered personal injuries. Defendant's main line between St. Paul and Seattle, in passing through Perham, a town of approximately 2,000, virtually divides it in half. Four of its streets cross the railroad, the accident occurring on the Ninth Street crossing, which is the second crossing from the west. At the crossing in question there are five tracks running in a general easterly and westerly direction, designated from the south to the north as the Tesch Spur, the eastbound main line, the westbound main line, the passing track and the house track. The accident occurred on the eastbound main line, at which time the car was traveling north and the train east. On the east side of Ninth Street and south of the crossing, in compliance with the order of the Railroad and Warehouse Commission, was a standard railroad crossing sawbuck sign, with an octagonal stop sign. This sign is 12 feet south of the center of the Tesch Spur and 42.3 feet south of the center of the eastbound main line. Ninth Street intersects the tracks at right angles and the tracks and street are on substantially the same grade. West of the crossing the tracks are level for several miles, and to the east there is a slight down grade. A major issue between the parties is whether or not a box car was located on the Tesch Spur west of the crossing.

If no box car were present the driver of an automobile would have a view to the west of 2461 feet from the stop sign (no farther because of the Tesch Lumber Company building), and when 36 feet south of the main track a view to the west for 2½ miles. If, however, a box car were located on the Tesch Spur west of the crossing with its east end 20 feet from the street, as claimed by the plaintiff, then the driver of the automobile sitting on the crossing in the middle of the Tesch Spur could see 195 feet to the west down the eastbound main line, and if it were directly over the north rail of the Tesch Spur he could see 280 feet. To have an unlimited view to the west the front end of his automobile would be within 11½ feet from the point where a locomotive would overhang the south rail of the eastbound main line. It is undisputed that a gondola car was located on the Tesch Spur east of the crossing, which was the only obstruction to the east.

The Haugan family had lived within two blocks of the tracks for about six weeks preceding the accident, and prior thereto had lived in the country a short distance from Perham. They had crossed the tracks numerous times and were familiar with the Ninth Street crossing. The accident occurred on Sunday, October 13, 1946, about six p. m., being just between daylight and dark—twilight. The headlights on both the automobile and the train were shining. Emil Haugan was driving his 1937 Chevrolet coach automobile, and his son, Lyle, aged 10, and his wife, Lillie, were in the front seat, Lyle being in the middle. They drove in a westerly direction on U. S. Highway No. 10 toward Ninth Street. At this point the highway runs parallel to the tracks and is 146 feet south thereof. Emil Haugan turned to the right on Ninth Street and headed north toward the railroad. From the highway and street intersection the view of the railroad west of the Ninth Street crossing is completely obstructed by the lumber company building. The de-

ceased came to a stop opposite the stop sign, from which point he and the occupants of the car looked to the right and left, but neither saw nor heard a train. Emil Haugan proceeded forward very slowly and he and the occupants continued to look both ways after crossing the Tesch Spur. Lillie and Lyle Haugan neither saw nor heard the train. When the car went up on the main line track the accident occurred. The car did not stop at any point between the stop sign and the place of the impact. The engineer of the train observed the car 35 or 40 feet from the eastbound main line track when the train was approximately 300 feet from the crossing, but it appeared to him that the car would clear the crossing in time to avert an accident. When about 100 or 150 feet from the crossing, the engineer made an emergency application of the brakes. The train was the all Pullman first section of the North Coast Limited, consisting of 10 cars, traveling, before the brakes were applied, approximately 60 miles per hour. After the train was dynamited it came to a stop in approximately 3,000 feet.

The defendant moved for a directed verdict in each case at the close of the evidence, which motions were denied and the issues submitted to the jury. The jury returned a verdict for the plaintiff in each case. Thereafter, the defendant moved that the court set aside the verdicts and grant the defendant judgment notwithstanding the verdicts. Defendant also moved for a new trial. The court denied the motions and this appeal followed. ·

The defendant contends that the evidence conclusively shows the defendant was not guilty of any charges of actionable negligence, there being insufficient evidence to support the verdict, and that the collision was due solely to the negligence of the driver of the automobile and the contributory negligence of the passengers.

The accident having occurred in Minnesota, the rights, duties and liabilities of the parties must be determined under the laws of that state. Flagg v. Chicago Great Western Ry. Co., 8 Cir., 143 F.2d 90; Roth v. Swanson, 8 Cir., 145 F.2d 262.

In considering defendant's motion for a directed verdict, the court must take that view of the evidence which is most favorable to the plaintiff, together with all inferences reasonably deductible therefrom. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. If there were substantial evidence supporting any of the charges of actionable negligence, the defendant was not entitled to a directed verdict. We have reached the conclusion that the trial court properly overruled defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

It is contended that the trial court erred in submitting to the jury as a fact issue the question of whether or not the defendant was negligent in permitting and causing the view of the track west of the Ninth Street crossing to become obstructed by a box car on the Tesch Spur west of the crossing, the defendant contending that as a matter of law no box car was present upon said Spur. In order to determine whether or not this matter should have been presented by the trial court to the jury, we must turn to the evidence. The courts have repeatedly held that a mere scintilla of evidence is not enough to request the submission of an issue to the jury. Gunning v. Cooley, supra; Pa. Railroad Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819.

Numerous witnesses who were at the scene of the accident on the date of the disaster testified as to the existence and non-existence of the box car. The defendant concedes that the testimony standing alone based on visual observation did create a fact issue, but it is the defendant's theory that certain photographs, documentary evidence in the form of defendant's records, and physical facts, contradict the testimony of plaintiff's witnesses as a matter of law. The defendant seeks to dismiss the evidence of the eye witnesses as a mere scintilla of evidence. If such it is, it is difficult to conceive what is meant by substantial evidence. In the case of Fink v. Northern Pacific Railway Co., 162 Minn. 365, 203 N.W. 47, a case similar to this case, where the plaintiff's witnesses testified as to the existence of brush and the defend-

ants introduced a photograph taken the day after the accident showing that it had been cut, the court held that the issue had been properly submitted to the jury. In Kitman v. Chicago, B. & Q. R. Co., 113 Minn. 350, 353, 129 N.W. 844, witnesses on behalf of the plaintiff testified as to certain conditions with respect to a locomotive and tender, and the railroad introduced certain records disputing that. The court held that the matter was properly submitted to the jury, and said: "While records of this character are entitled to careful consideration, and cannot be lightly brushed aside, we cannot say in this instance that they must be accepted as final on the disputed point." The Gunning case, supra, 281 U.S. 94, 50 S.Ct. 233, after setting out the mere scintilla of evidence rule, says: "Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury."

We think the trial court properly submitted the question of the existence of the box car upon the Tesch Spur west of the Ninth street crossing.

■ A statute of the State of Minnesota, as quoted by the trial court, provides:

"Every engineer driving a locomotive on any railway, who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded, at least eighty rods from any place where such railway crosses a traveled road or street, on the same level, except in cities, or to continue the ringing of such bell or sounding of such whistle at intervals until such locomotive and the train thereto attached shall have completely crossed such road or street, shall be guilty of a misdemeanor." Sec. 616.34, Minnesota Statutes Annotated.

A violation of this statute is negligence per se. Roth v. Swanson, supra.

■■ Numerous witnesses testified with respect to the ringing of the bell and blowing of the whistle. A number of these witnesses, including the plaintiffs Lillie and Lyle Haugan, testified that they did not hear either. Some of the others testified that they heard the whistle but could not fix the time or place with respect to the accident, and a part of the train crew testified that the bell was ringing and the whistle was blowing in accordance with the statutory requirements. We think this matter was properly submitted to the jury. While the testimony on behalf of the plaintiffs was negative testimony, this is proper testimony under the Minnesota law. The leading case on the subject is Cotton v. Willmar & S. F. Ry. Co., 99 Minn. 366, 109 N.W. 835, 8 L.R.A.,N.S., 643, 116 Am.St. Rep. 422, 9 Ann.Cas. 935. There are numerous cases to this effect, and this court in Roth v. Swanson, supra, 145 F.2d 266, stated: "The rule in Minnesota presently appears to be that evidence that train signals were not heard by those who could and probably would have heard them if the signals were given, is substantial evidence that the signals were not given."

■ The Court instructed the jury in part as follows: "However, the engine crew are required to keep a look-out ahead to observe persons on or near the track or in a position of danger, and to stop if they see or by the exercise of ordinary care could see persons in danger in time to stop, and thus prevent an accident."

The defendant requested the court to instruct the jury as follows: "The engineer was under no duty to stop or slacken the speed of the train until it became reasonably apparent to him in the exercise of reasonable care that the decedent Haugan was about to drive his automobile on or dangerously near the track upon which the train was traveling."

It is true the requested instruction includes the words "or slacken the speed." The instruction given and the instruction requested are substantially the same. The given instruction is more favorable to the defendant than the requested one. By its request the defendant invited the court to submit the question of the duty to stop to the jury. The requested instruction was marked that it would be given in substance. The variance between the requested and the given instruction is insubstantial and defendant cannot now complain of an in-

struction given at its request. Redmond v. St. Paul, M. & M. R. R. Co., 39 Minn. 248, 40 N.W. 64; Lanesboro Produce & Hatchery Co. v. Forthun, 218 Minn. 377, 16 N.W. 2d 326.

■■■■ The court instructed the jury in part as follows: "The employees of the defendant had a right to assume that persons in the act of crossing its railroad would use ordinary care for their own safety; and, when a train was in sight of a grade crossing, that persons approaching on a public street or highway would stop."

Defendant's complaint to the instruction relates to the words "in sight", and further, that the court did not give the defendant's proffered instruction covering this point. The trial court informed defendant that the requested instruction would be given in substance, and so marked the request. We think the court kept its word. The variance between the requested and the given instruction is insubstantial. The mere fact that the court did not use the exact language of the requested instructions is immaterial. Blanton v. Northern Pacific Ry., 215 Minn. 442, 10 N.W.2d 382; Petterson v. Butler Bros., 123 Minn. 516, 144 N.W. 407; Cohen v. Evening Star Newspaper Co., 72 App.D.C. 258, 113 F.2d 523.

■■■■ Defendant had fully complied with requirements of the Railroad and Warehouse Commission on the subject of warning devices at the crossing, and there appears to be no statutory regulation of the speed of the train passing through the village of Perham. Because of these facts and its theory that the crossing in question was not "extra hazardous", defendant charges the trial court with error in submitting to the jury the issues as to whether or not defendant failed to provide adequate warning signals and whether or not the speed of the train was excessive.

The Minnesota courts have repeatedly held that the providing of the crossing signals that comply with a state statute or commission order does not always satisfy the common law requirement of due care and therefore absolve a railroad from negligence. They have concluded, as have the majority of the courts in this country, that if ordinary care requires more than was required under the Code, that liability would follow if the failure to exercise ordinary care was the proximate cause of the injury. Licha v. Northern Pacific Ry. Co., 201 Minn. 427, 276 N.W. 813; Koop v. Great Northern Ry. Co., 224 Minn. 286, 28 N.W.2d 687; Blaske v. Northern Pacific Ry. Co., 1949, 228 Minn. 444, 37 N.W.2d 758.

■■■■ The approach taken to the warning device question in most cases is to first ascertain whether or not the particular crossing can be considered extra-hazardous and the answer to that determines whether or not it is a jury question on the adequacy of the devices provided.

The matter of negligence by reason of excessive speed stands upon practically the same footing as the matter of negligence in failing to maintain adequate crossing signals, except in the former the courts usually require "special circumstances" in order to make out a submissible issue rather than "extra-hazardous crossing", although the two terms add up to about the same thing. An instruction on speed was approved in Bryant v. Northern Pacific Ry. Co., 221 Minn. 577, 581, 582, 588, 589, 23 N.W.2d 174, 177, 181, which reads as follows:

"High speed may not, in itself, constitute actionable negligence but may be such when considered in connection with conditions existing on its (defendant's) right of way at much-used crossings in villages or cities. Whether or not the operation of the train at a fast rate of speed through a city and over and across the streets thereof is an act of negligence depends upon the facts of the particular case, the presence or absence of fixed crossing signals, the population of the village, the extent and use of the streets crossing the railroad track, and all other facts throwing light upon the question, and it is for the jury to determine what constitutes an unreasonable speed, taking into consideration all of the conditions and circumstances then and there existing."

The court further said:

"From the foregoing, the rule appears well established here that, if there is any-

thing dangerous or unusual about a crossing within the corporate limits of a municipality, or if it be improperly guarded by signals, regardless of statutory requirements, or if obstructions interfere with the view of travelers using the same, and such factors are known to the company, a fact question arises as to the proper speed at which such a crossing may be passed."

In Molden v. Minneapolis, St. P. & S. S. M. Ry. Co., 160 Minn. 471, 200 N.W. 740, the court held that evidence that the engineer failed to sound the whistle or bell made out a submissible question on negligence in the rate of speed. An alleged box car obstruction in Polchow v. Chicago, St. P. M. & O. Ry. Co., 199 Minn. 1, 270 N.W. 674, was the special circumstance that caused the court to hold the question of speed is one peculiar for the jury.

■ This court in Roth v. Swanson, supra, deals with this question at length, and under the evidence considered it a question for the jury. In the instant case the crossing was in a village of approximately 2,000 population, there were five tracks, and the railroad divided the village in halves, the train was running at a speed of approximately 60 miles per hour, 12 to 18 trains passed the crossing daily, and probably four to five hundred cars and bicycles. There were box cars on the two spur tracks from time to time. There is evidence that the bell and whistle were not sounded, and that at the time in question there was a box car on the Tesch Spur west of the crossing and a gondola car east of the crossing. Under these circumstances reasonable minds could determine that the crossing was extra-hazardous, that the speed of the train was excessive, and that due care required the maintenance of safeguards in addition to the cross-buck and stop sign. Under the Minnesota law both issues were submissible to the jury.

Having determined that the issues of negligence in regard to warning devices, as well as in regard to the speed of the train, were questions for the jury, was the warning device issue properly submitted? The jury was informed:

"It is likewise the duty of the defendant railway company to use reasonable care to install modern signs, lights and devices on busy streets to notify travelers of approaching trains and of danger ahead.

"A certified copy of an order of the Railroad and Warehouse Commission of Minnesota has been received in evidence in this case, which required the defendant railway company to install a 'stop sign' at the place of the accident. These signs were installed but that is not conclusive proof that the defendant exercised reasonable care at said crossing. The facts may be such as to show that reasonable care requires more than has been required. It is your function to decide whether the defendant used reasonable care at the crossing and your function cannot be taken from you by the Railroad and Warehouse Commission."

It is contended that the trial court determined as a matter of law that the railroad was under a duty to install signal devices in addition to those designated by the Railroad and Warehouse Commission, and that the second paragraph of the quoted instruction did not cure such defect. The claim is without merit. Having properly determined that the duty of the defendant in regard to warning signals was the duty to use reasonable care and not necessarily to comply with the order of the Commission, this thought was conveyed to the jury in the first paragraph above in the form of an abstract statement of the applicable law. The jury was not told that defendant was required to install anything, but only that it was required to use reasonable care, and to install modern signs, lights, and devices only if reasonable care so required, and the court did not say whether or not Ninth Street was a busy one. This determination, as well as the determination of what reasonable care required, was left for the jury. From the instruction as a whole or from any part thereof there can be found no disclosure of the court's opinion on the disputed fact, and the instruction is proper.

■ In considering the claim of defendant that the decedent was negligent as a matter of law, we must accept the evidence favorable to the plaintiff as true and plain-

tiff is also entitled to the benefit of such reasonable inferences as may arise therefrom. Duluth, Western & Pacific Ry. Co. v. Zuck, 8 Cir., 119 F.2d 74.

From evidence favorable to the decedent, the jury in the instant case could find that the train crew did not blow the whistle or ring the bell. This would have some bearing on the conduct of the decedent. Green v. Great Northern Ry. Co., 123 Minn. 279, 143 N.W. 722. The Court had the following to say in the case of Pogue v. Great Northern Ry. Co., 127 Minn. 79, 83, 148 N.W. 889, 891:

"The traveler may, in regulating his conduct, have some regard to the presumption that the railroad company will give proper signals, and, if he hears none, the same preparedness and caution will not be expected of him as would be required in case proper signals were given * * *. In other words, the failure of the defendant to give expected signals may excuse a traveler in relaxing somewhat in his vigilance, but it has never been held to dispense with vigilance altogether."

In addition to the obstruction to view caused by the Tesch Lumber Company building, the jury could also have found that a box car was located west of the crossing on the Tesch Spur track so as to prevent decedent from having a clear view of the main line to his left and in the direction from which the train approached until the front end of the automobile was 11½ feet from the anticipated over-hang of the engine on the main line. This, too, bears upon the conduct of the deceased, as did the conduct of Turner in Turner v. Minneapolis, St. P. & S. S. M. Ry. Co., 164 Minn. 335, 342, 205 N.W. 213, 215, where the court said:

"Its (railroad company's) negligence created a new danger by the placing of the box cars so as to unnecessarily obstruct the view of those about to use the crossing. * * * The negligence of the railroad company did not excuse Turner from using due care, but such negligence is a circumstance favorable to him, and to be considered in determining his contributory negligence."

The location of the gondola car on the Tesch Spur track to the right created another partial obstruction to view, for he looked both ways and did not know from which direction a train might approach. Thus we have another factor to consider in weighing decedent's conduct as he slowly moved forward. The Court in Pokora v. Wabash Ry. Co., 292 U.S. 98, 105, 54 S. Ct. 580, 583, 78 L.Ed. 1149, 91 A.L.R. 1049, reminds us:

"One must remember that while the traveler turns his eyes in one direction, a train or a loose engine may be approaching from the other.

"Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law."

Considering now the conduct of decedent: When he had an unobstructed view he was 11½ feet from danger and was driving about 5 miles per hour or 7⅓ feet per second. Under such circumstances we cannot say as a matter of law that he could have brought the automobile to a stop or could have made a 90 degree turn in either direction and that he was negligent in not stopping or turning.

Decedent stopped at the stop sign and then proceeded forward at a very slow rate of speed. Whether or not due care required him to again come to a complete stop when his view was unobstructed and when he listened but heard no approach signals, was a jury question. The jury could have concluded that the deceased did press forward with all his faculties alert and that his conduct was not negligent. There is a presumption that a dead man exercised due care for his own safety. Because of the circumstances we have outlined, it is believed the jury could properly find the presumption was not rebutted. The Minnesota courts have held that the defense of contributory negligence should be approached with an inclination to sustain a verdict to the contrary if the matter is fairly open to discussion or doubt. McCarty v. Chicago, M. & St. P. Ry. Co., 154 Minn. 350, 191 N.W. 819.

The Minnesota courts have been reluctant to take the issue from the jury. Green v. Great Northern Ry. Co., supra; and Polchow v. Chicago, St. Paul, M. & O. R. Co., supra. We think the question of whether decedent was guilty of negligence was a question for the jury.

If the conclusion above is sound, obviously the action of the trial court was proper in refusing to rule that the passengers were negligent as a matter of law. Lillie Haugan had no control of the automobile and does not drive. She looked both ways and listened as they approached the track, and the next thing she remembered was seeing a flash, then being picked up while lying on the tracks. Assuming the question of Lyle's negligence being properly raised, what has been said regarding the conduct of his mother, applies equally to him. The law with respect to the mother and son is summed up in Carnegie v. Great Northern Ry. Co., 128 Minn. 14, 16–17, 150 N.W. 164, 165, as follows:

"In order to conclusively charge a mere passenger with contributory negligence in failing to see an approaching train, something more than ability to see and a failure to look must be shown. * * * In general, the primary duty of caring for the safety of the vehicle and its passengers rest upon the driver, and a mere gratuitous passenger should not be found guilty of contributory negligence as a matter of law, unless he in some way actively participates in the negligence of the driver, or is aware either that the driver is incompetent or careless, or unmindful of some danger known to or apparent to the passenger, or that the driver is not taking proper precautions in approaching a place of danger, and, being so aware, fails to warn or admonish the driver, or to take proper steps to preserve his own safety."

As has been stated, the train could not have been brought to a stop after the engineer saw or could have seen the automobile. Assuming that the box car was present, when it was possible for the engineer to see the automobile the collision was imminent, and if the box car were not present at the time that it became apparent

to the engineer that the driver of the automobile was not going to stop, it would have been impossible for the engineer to have averted the collision. This court in Roth v. Swanson, supra, 145 F.2d 268, 269, a case in which the facts were even more favorable to the plaintiff than in this case, said:

"So far as the omission of the fireman to keep a lookout is concerned, we shall assume, without deciding, that the jury might properly have found from the evidence that it was his duty to remain on his seat in the cab of the locomotive and to look ahead at all times when the train was passing through Walnut Grove. The jury could properly have found that if the fireman had done so, he would have seen the automobile before it reached the track. There is, however, no basis in the evidence for believing that if the fireman had seen the automobile coming toward the track, the collision could have been avoided. The fireman would have been under no duty to notify the engineer of the approach of the slowly moving automobile until such time as it became apparent that the driver was not going to stop and that a collision was imminent. Asklund v. Chicago Great Western R. Co., 176 Minn. 214, 217, 218, 223 N.W. 95, 96; Engberg v. Great Northern R. Co., 207 Minn. 194, 200, 290 N.W. 579, 583 [154 A.L.R. 206]. It seems obvious that by that time there would have been nothing that the engineer could have done to avoid the collision. See Hoyum v. Duluth, W. & P. R. Co., 203 Minn. 35, 39, 40, 279 N.W. 729, 731. We think that the issue whether the failure to keep a proper lookout was a proximate cause of the collision was not a question of fact for the jury."

We think the trial court erred in submitting the lookout question to the jury.

When more than one theory is submitted to the jury it is impossible to say upon which theory the jury based its verdict. A general verdict in such instances cannot be upheld because the generality of the verdict renders it impossible to determine upon which theory the jury based it. It may have been founded upon the erroneous instruction. Parker v. Gor-

don, 1 Cir., 178 F.2d 888; Detroit T. & I. R. Co. v. Banning, 6 Cir., 173 F.2d 752; Roth v. Swanson, supra.

The judgments are reversed and the cases are remanded to the District Court with instructions to grant a new trial.