**ARKLA EXPLORATION COMPANY,**
Appellee,

v.

Sam **BOREN** et al., Appellants.

**ARKLA EXPLORATION COMPANY,**
Appellant,

v.

Sam **BOREN** et al., Appellees.

Nos. 19430, 19444, 19445.

United States Court of Appeals
Eighth Circuit.

June 10, 1969.

Charles R. Ledbetter, of Shaw, Jones & Shaw, Fort Smith, Ark., for Sam Boren et al.; Richard B. Shaw, Fort Smith, Ark., of Shaw, Jones & Shaw, on the brief.

Robert Roberts, III, of Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for Arkla Exploration Co.; Heartsill Ragon and Wayne Harris, of Warner, Warner, Ragon & Smith, Fort Smith, Ark., on the brief.

Before VAN OOSTERHOUT, Chief Judge, VOGEL, Senior Circuit Judge, and HEANEY, Circuit Judge.

VAN OOSTERHOUT, Chief Judge.

Before us are appeals by Sam Boren and associates from judgment entered against them for a balance due on a contract in the sum of $39,039.15 in favor of plaintiff Arkla Exploration Company (Arkla) and dismissing defendants' counterclaim and from an order denying defendants' motion for a new trial or in the alternative, for judgment n. o. v. Arkla has cross-appealed from final order denying its post-trial motion for prejudgment interest. Jurisdiction based upon diversity of citizenship is established.

This litigation arose out of an operating agreement entered into between Arkla and Boren, for himself and on behalf of certain named defendants whom he represents. There is no dispute with respect to Boren's authority to bind his co-defendants and Boren and such defendants will for convenience be collectively referred to in the opinion as Boren.

The operating agreement relating to a wildcat drilling venture was entered into by Arkla, Boren and other persons. The agreement provided that Arkla as operator should have full control of the drilling operations and should drill the well in a good and workmanlike manner and with due diligence to 12,000 feet or the top of the Mississippian Formation, whichever occurred first, unless granite or other practically impenetrable substance is encountered at a lesser depth, or unless all parties agree to complete the well at a lesser depth. The contract also provided that Arkla shall have no liability to defendants for losses sustained except such as may result from gross negligence or from breach of provisions of the agreement.

The contract provided that all drilling costs would be shared in the proportion of 50% by Arkla, 34.375% by Boren and 15.625% by other parties. Parties other than the Boren group have paid their share of the drilling costs. Arkla proceeded to drill the well pursuant to the obligation it assumed in the operating agreement. The money spent by Arkla in carrying out the joint undertaking is not disputed. It is stipulated that the cost of the well attributable to the Boren interests is $125,042.37 and that Boren has paid $86,003.22 thereon, leaving a balance of $39,039.15 unpaid. The jury awarded Arkla $39,039.15.

Unanticipated difficulties were encountered in drilling the well which greatly increased the cost of drilling. The drilling was abandoned at a depth of 8,601 feet on December 25, 1965.

Boren, as a defense to Arkla's suit to recover Boren's proportionate share of the drilling costs and by way of counterclaim for a recovery of the drilling payments it had made, asserted Arkla had not performed its drilling obligation with diligence and in a workmanlike manner; that Arkla failed to proceed to 12,000 feet or the Mississippian Formation; that Arkla failed to establish that the drilling was stopped because a practically impenetrable substance was reached, and that Arkla failed to prove Boren consented to termination of the drilling.

BOREN'S APPEALS.

Boren urges that it is entitled to a reversal and remand for a new trial be-

cause of error in the court's instructions in the following respects:

I. Erroneous and conflicting definitions of practically impenetrable substance.

II. Error in submitting the issue of consent to termination of drilling when defense of consent was not pleaded and no evidence was introduced to support a finding of consent.

█ The asserted errors relate to two of three alternate bases upon which Arkla relied. The third basis, to the effect that the Mississippian Formation was reached, is not involved in the attack on the instructions here made. There is substantial evidence to support the contention that the Mississippian Formation was reached. However, since there is no way of determining the theory upon which recovery was allowed by the jury, Boren is entitled to have the errors he asserts considered and to a reversal and a new trial if the instructions excepted to are erroneous and prejudicial. For the reasons hereinafter set out, we find no prejudicial error was committed.

## I.

Boren's first point asserts that the court erred in instructing the jury as follows:

"You are instructed that the contract uses the terms 'practically impenetrable substance.'

"You are instructed that practically impenetrable substance in this lawsuit is any substance that is encountered which is not penetrable with reasonable cost and facilities as long as the driller has performed the drilling with due diligence and without negligence. In other words, a practically impenetrable substance is one in which with available equipment and at a reasonable cost the substance cannot be penetrated.

"You are instructed that if you find the term 'practically impenetrable substance' has an accepted meaning among persons experienced in the oil and gas industry, then you must use that meaning in determining whether a practically impenetrable substance was encountered during the drilling of the Fronterhouse No. 1 well."

Elsewhere in the instructions the jury is told that if they find by a preponderance of the evidence that Arkla proceeded in a workmanlike manner and with due diligence and that the drilling was discontinued because practically impenetrable substance was encountered at 8,601 feet, Arkla was entitled to recover Boren's proportionate share of the drilling cost. The contract excuses going to the depths specified by the contract if "granite or other practically impenetrable substance is encountered at a lesser depth."

██ Defendants' first objection to the instruction, raised below and here, is to the omission of the word "granite" from the definition. There is no contention made that granite was encountered and we perceive no prejudicial error in the omission of such word. The language used in the first paragraph of the instruction quoted is the same in substance as that contained in defendants' requested Instruction No. 4. Defendants are in no position to object to the giving of instructions which are given at their request. Northern Pacific Ry. Co. v. Haugan, 8 Cir., 184 F.2d 472, 476.

Moreover, we believe the use of the word "practically" preceding the words "impenetrable substance" has considerable significance. "Practically" is defined in Webster's Unabridged Dictionary as follows: "in a practical way; as * * * virtually, to all practical purposes (although not entirely or absolutely)." In the somewhat analogous field of impossibility, § 454, Restatement Contracts, provides:

"In the Restatement of this Subject impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved."

See Corbin on Contracts, § 1325.

██ Boren also attacks the second paragraph of the quoted instruction upon

the basis that there is no proof as to the industry meaning of practically impenetrable substance.

Expert testimony as to the industry meaning of technical words in a contract is admissible. 17 Am.Jur., Contracts § 251. Contrary to Boren's contention, testimony on the industry meaning of the disputed words is present here. Mr. Yarbrough, manager of the drilling of Arkla, in response to an inquiry as to the meaning of the words in the oil and gas industry, stated:

"We feel that the term practically impenetrable substance means the substance or a condition which, the result of which, makes your drilling rate so slow and so expensive in light of what you have to gain by continuing to drill that the well becomes an economic impossibility to continue."

The testimony of Boren's expert, Mr. Culp, includes:

" * * * I believe Mr. Culp you had something to say about impenetrable substance; if we add the word practically to that that would have some bearing on the meaning, wouldn't it? A. Yes, sir, it would.

"Q. And also would it be your opinion that the cost of drilling would have something to do with that meaning? A. Yes, sir, but it would also depend on what caused that cost problem to come about."

There is no substantial difference between the general definition of the words "practically impenetrable substance" and the meaning attributed by the industry to such words.

Boren's challenge goes to the correctness of the instruction and does not go to the sufficiency of the evidence to support a finding for Arkla on the basis of the law stated in the instructions.

## II.

■ The court, following the express terms of the contract, advised the jury that an alternate basis for excusing Arkla for not drilling beyond the 8,601 foot level would be an agreement by all parties that drilling should cease. The court then continued, "[I]n this regard you are instructed that if the defendant, Boren, gave notice to the plaintiff prior to or at 8601 feet that he and his associates would no longer participate in the cost of the well that notice would be, in effect, an agreement on their part to stop drilling at 8601 feet."

The evidence reflects that all parties to the contract, apart from the Boren group, expressly consented to stopping the drilling upon the basis that to continue would be economically infeasible. Boren excepted to the portion of the instruction just quoted on the ground that such consent provision was not pleaded and that the issue was never properly raised in the trial court. Arkla does not contend that Boren expressly consented to the stopping of the drilling. The challenged instruction does not present the issue of express consent but raises the issue that a repudiation by Boren of his contractual obligation to contribute to his agreed proportionate part of the well cost prior to any default on the part of Arkla would constitute an anticipatory breach of the contract by Boren and it would excuse Arkla from its obligation to further perform its contractual obligation.

The effect of the instruction challenged when considered with the instructions as a whole is that if Boren repudiated his obligation to pay his proportionate share of the cost at a time Arkla was not in default, such repudiation would constitute an anticipatory breach which would discharge Arkla from any further duty to continue the drilling. Boren's contention that the anticipatory breach issue was not before the court because it was not pleaded lacks merit. Rule 15(b), Fed.R.Civ.P., provides:

"Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to con-

form to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *"

We are satisfied that the anticipatory breach issue was before the court. The court's statement of the issues includes: "The plaintiff has denied that it has failed to perform the contract in accordance with the terms and conditions thereof, but alternatively claims that if it failed in certain respects, that it was excused from doing so by reason of the defendants repudiation of their obligation to continue to pay their pro rata share of the cost of drilling the well."

Both parties without objection offered evidence on the anticipatory breach issue, including the following:

1. On December 10, 1965, Arkla wrote Boren and other participants that due to unforeseen complications in drilling which had greatly increased estimated costs it had decided to consummate drilling at 8,700 feet and requested early advice from the participants as to their desires in the matter.

2. On December 21, 1965, Boren wired Arkla stating that Arkla had breached its obligation to drill with diligence in a workmanlike manner and advised, "Any past or future cost, expense or risk in connection with this well should be borne by Arkla."

3. On December 22, 1965, Arkla wired Boren and others that it planned to stop drilling and abandon the well because of the extremely high drilling costs and that, "If no reply is received in twenty four hours we assume you have concurred with our decision. Call or wire sender collect."

4. On December 23, 1965, Boren responded by wire as follows: "Reurtel December 22nd this is to advise that in due of the fact that I have already notified Arkla that Arkla has breached our operating contract these consent provisions thereof are not applicable."

The well was abandoned on December 25, 1965. The issues of whether Arkla performed its contractual obligation in a workmanlike manner and whether it was guilty of gross negligence were submitted to the jury by appropriate instructions. The jury by its verdict found in favor of Arkla upon such issues. There is no claim that the law with respect to anticipatory damages has not been properly stated. See Restatement of Contracts §§ 318, 274 and 397.

We hold that the court committed no prejudicial error in giving the instructions here challenged by Boren and that on Boren's appeals, the judgment is affirmed.

## ARKLA'S CROSS-APPEAL.

Arkla's cross-appeal is from the denial by the court of its post-judgment motions under Rules 54(c), 59(e) and 60, Fed.R.Civ.P., asking that the judgment based on the jury verdict be amended to include prejudgment interest.

It is not disputed that the judgment bears interest from the date of its rendition. The contract itself provides for interest on unpaid accounts commencing thirty days after bills are received. There is no adequate evidence to show when Arkla submitted bills to Boren for costs incurred. Arkla's first complaint, filed in 1966, states Boren's obligation under the contract to be $37,764.94, and the same figure appears in the amended complaint filed January 22, 1968. At the opening of the trial, the parties stipulated that Boren's proportionate share of drilling costs, subject to its defenses, over and above the amount Boren had paid amounted to $39,039.15. No information appears as to how such figure was arrived at.

The court in its instructions stated that if the jury found for Arkla on the liability issue, the verdict should be for $39,039.15 and such is the amount of the verdict returned and the judgment entered. No exceptions were taken to such instructions nor was any attempt made to reserve the interest issue. Under Rule

51, Fed.R.Civ.P., Arkla to preserve an error in instructions was required to except thereto. The court committed no error in overruling the post-judgment motions to add prejudgment interest. See Hoffman v. Celebrezze, 8 Cir., 405 F.2d 833; Morse Boulger Destructor Co. v. Camden Fibre Mills, Inc., 3 Cir., 239 F.2d 382.

The judgment appealed from is affirmed upon Boren's appeals and upon Arkla's cross-appeal.